Sheldon F. SACKETT, and KVAN, Inc., a Washington corporation, Appellants,

v.

J. Frank BEAMAN, and Fidelity and Deposit Company of Maryland, a corporation, Appellees.

No. 22182.

United States Court of Appeals Ninth Circuit.

Sept. 5, 1968.

Nathan S. Smith (argued), James G. Seely, Jr., San Francisco, Cal., for appellants.

Everett S. Layman, Jr. (argued), Rudolph J. Scholz, Sedgwick, Detert, Moran & Arnold, San Francisco, Cal., for appellees.

Before HAMLEY, JERTBERG and CARTER, Circuit Judges.

HAMLEY, Circuit Judge:

This action, commenced on April 20, 1967, is the outgrowth of a private securities transaction which occurred on November 8, 1961. The plaintiffs are Sheldon F. Sackett and KVAN, Inc., of which Sackett is president, referred to herein collectively as Sackett. They predicate district court jurisdiction, and defendants' liability, on sections 17 and 22 of the Securities Act of 1933, 48 Stat. 84 and 86 (1933), as amended, 15 U.S.C. §§ 77q and 77v (1964), and sections 10 and 27 of the Securities Exchange Act of 1934, 48 Stat. 891 and 902 (1934), as amended, 15 U.S.C. §§ 78j and 78aa (1964).

The defendants are J. Frank Beaman and Fidelity and Deposit Company of Maryland (Fidelity). Defendants moved to dismiss the action for lack of jurisdiction, failure to state a claim, the running of the statute of limitations, laches, and non-joinder of necessary parties. The motion was granted on the ground that the action is barred by the statute of limitations and by laches. The district court thereupon entered judgment for defendants.

Appealing to this court, Sackett argues that: (1) the district court erred in denying leave to file a second amended complaint, (2) the statute of limitations relied upon by the court is not applicable, and (3) assuming that the statute relied upon by the court is applicable, the action is not barred by that statute because (a) the claim was asserted within the statutory period, and (b) alternatively, the operation of the statute was suspended until May 1965.

A rather comprehensive statement of the undisputed facts will facilitate discussion of the legal issues. On November 8, 1961, Sackett entered into a written contract with Beaman and Ernest S. Johnston to purchase from them 2,500 shares of the common stock of News Publishing Company, a Virginia corporation, for approximately $25,000. As a part of the agreement, Sackett also agreed to pay Beaman the further sum of $8,591.50, representing the amount Beaman expended on behalf of News Publishing Company for expenses, fees and services.

Under the terms of the agreement, $1,000 of the $25,000 figure was to be paid in cash upon the signing of the agreement, and the remaining $24,000 thereof was to be evidenced by a promissory note. The agreement called for a $2,000 payment on the $8,591.50 item within fifteen days after the date of the agreement, and the execution of a promissory note in the sum of $6,591.50, due sixty days thereafter.

Sackett made the $1,000 cash payment and executed and delivered the promissory notes as called for in the agreement. The $24,000 promissory note provided for payment in thirteen installments. Johnston thereafter assigned all of his right, title and interest in the agreement and promissory notes to Beaman, and Johnston will therefore not be further referred to in this opinion.

During the negotiations for this contract, Beaman brought to San Francisco, presumably from Virginia, and showed to Sackett, a profit and loss statement which, due to a mathematical error, indicated a net profit in the operation of News Publishing Company of over $5,000 for the period from June 15 to August 24, 1961. In fact there was actually a net loss of over $800 during that period. Sackett alleges that he did not know of this error until about November 30, 1961, when he received a balance sheet showing that News Publishing Company suffered a net loss of $37,612.34 from its inception on May 18, 1961 to October 31, 1961.

About December 30, 1961, Sackett gave Beaman written notice that he rescinded the contract for failure of con-

sideration, and demanded cancellation and return of the promissory notes.

On January 24, 1962, Beaman filed a suit against Sackett in the Superior Court of the State of California for the City and County of San Francisco to recover approximately $10,000, the amount then due on the contract and promissory notes, plus interest. Sackett defended on the grounds of failure of consideration, mistake of fact, fraud and his purported rescission. Sackett also cross-complained for a judicial rescission of the contract, cancellation and return of the promissory notes, and for the refund of $1,000 which Sackett had paid to Beaman.

On May 4, 1965, the Superior Court entered judgment for Beaman in the sum of $10,591.50, plus interest, together with attorneys' fees in the amount of $3,000, and ordered that Sackett take nothing under his cross-complaint. Sackett appealed and execution of judgment was stayed by virtue of an appeal bond in the sum of $20,500 which he obtained from Fidelity. To obtain this bond it was necessary for Sackett to assign to Fidelity, as security, various savings and loan association certificates of deposit totaling $20,500.

This judgment was affirmed by the California Court of Appeal in an unpublished opinion filed on March 22, 1967. Sackett's petition for hearing in the California Supreme Court was thereafter denied and the judgment became final on May 22, 1967. It was paid on July 31, 1967. In the meantime, on December 24, 1965, Beaman filed a second suit against Sackett in the same Superior Court, seeking a judgment in the sum of $22,000, alleged to be the balance due on the $24,000 promissory note, together with interest and attorneys' fees.

On April 20, 1967, while this second state court action was pending in the California Superior Court and the first state court action was pending in the California Supreme Court, Sackett filed his original complaint in the federal action now before us. He alleged that Beaman had offered and sold to Sackett the 2,500 shares of stock of News Publishing Company on November 8, 1961, by means of communications in interstate commerce and by the use of the mails. In connection therewith, Sackett alleged, Beaman obtained money and property by means of untrue statements of material facts and failure to state material facts.

By reason thereof, Sackett alleged, Beaman made the sale of stock by use of a deceptive device, in contravention of section 17 of the Securities Act of 1933 (15 U.S.C. § 77q), and section 10 of the Securities Exchange Act of 1934 (15 U.S.C. § 78j), and of the applicable rules of the Securities and Exchange Commission (Commission).[1] Sackett asked for a judgment declaring the contract of sale, and all obligations given by him in connection therewith, null and void, and for a stay of the second state court action pending a determination of the federal action.

On May 3, 1967, Sackett filed an amended complaint in which Fidelity was named as an additional defendant. In three causes of action, Sackett alleged essentially the same basis for relief as in the original complaint. However, he, for the first time, set out the facts concerning the first state action and Fidelity's connection therewith.

---

1. In particular, Sackett relied upon Commission Rule X–10B–5, now 17 C.F.R. 240.10b-5, which reads as follows:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interestate [sic] commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

He asked for a judgment declaring the contract of sale and all obligations given by him in connection with that contract to be unlawful and void. He also asked that Beaman be restrained from enforcing the judgment in the first state action and from prosecuting the second state action, and that Fidelity be restrained from paying any part of that judgment until this federal suit is disposed of.[2]

On May 9, 1967, Beaman, directing his attention to the original complaint, moved to dismiss the action on the grounds of lack of jurisdiction and failure to state a claim upon which relief can be granted. On June 13, 1967, Beaman and Fidelity, directing their attention to the amended complaint, moved to dismiss the action on the five grounds stated at the outset of this opinion.[3]

The two motions to dismiss were heard together on July 25, 1967, at the close of which the district court announced that the action would be dismissed because of laches on the part of Sackett, and asked that a form of judgment be prepared.

Counsel for Beaman prepared not only a form of judgment but proposed findings of fact and conclusions of law. And in the proposed conclusions of law prepared by counsel for Beaman, it was recited not only that the action was barred by laches (the ground relied upon by the district court in its oral decision), but that it was also barred by the statute of limitations and, particularly, section 338(4) of the California Code of Civil Procedure.[4]

After receiving a copy of the form of judgment and of the proposed findings of fact and conclusions of law, Sackett, on August 2, 1967, filed proposed modifications to the form of judgment and to the proposed findings of fact and conclusions of law.

Sackett proposed to amend the form of judgment by adding a recital to the effect that nothing therein should be deemed to determine the issue of Sackett's right to sue Beaman for damages arising out of the transaction. Sackett desired to amend the proposed findings of fact by striking two paragraphs which set up a factual basis for the conclusion that Sackett had been guilty of laches. He desired to amend the proposed conclusions of law to eliminate all reference to the statute of limitations, insert a savings clause recital of the kind he wished to add to the findings, change "dismissed with prejudice" to "dismissed without prejudice," and eliminate the recital that the issue of attorneys' fees is reserved for future determination.

Sackett's proposed modifications of the form of judgment and the proposed findings and conclusions were accompanied by a statement, memorandum, affidavit and, as an exhibit attached to the affidavit, the form of a second amended complaint. In this proposed second amended complaint, both Beaman and Fidelity were named defendants, but relief was sought only against Beaman. The requests for declaratory and injunctive relief, as made in the original complaint and first amended complaint, were dropped, and only monetary damages were sought.[5] These damages, in

2. On May 9, 1967, Sackett attempted to obtain a preliminary injunction restraining Beaman from enforcing the first state court action. The motion was denied by the district court on May 22, 1967. Sackett renewed his motion in this court but again without success.

3. Shortly thereafter Sackett sought a preliminary injunction restraining Beaman from prosecuting the second state action pending determination of the federal action. This motion was denied on September 5, 1967.

4. Section 338(4) provides that an action for relief on the ground of fraud or mistake can only be commenced within three years after the cause of action shall have accrued. The cause of action in such a case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.

5. As noted above, up to that time Sackett had sought only declaratory and injunctive relief. And, as Sackett concedes in this court, his prayer for injunctive relief

the sum of $18,870.22, were based on the sum Sackett was ultimately required to pay in satisfaction of the judgment in the first state action, no reference being made in the proposed new pleading to the second state action, which was presumably still pending.

In his statement accompanying the papers referred to above, Sackett indicated that his reason for seeking modification in the form of judgment and the proposed findings and conclusions, was to prevent any of the recitals therein from providing a basis for the defenses of res judicata or collateral estoppel against his claim for monetary damages, to be asserted in his proposed second amended complaint. Sackett's proposals were argued and orally denied on August 3, 1967.

Sackett had not filed a separate motion for leave to file a second amended complaint. But the purport of his papers filed on August 2, 1967, as described above, included such a motion. This motion was, in effect, orally denied at the August 3, 1967 argument.

The findings of fact, conclusions of law and judgment, as originally proposed by Beaman, dismissing the action with prejudice and reserving the question of attorneys' fees were then signed and filed. This appeal followed.

■ Sackett argues that the district court erred in denying him leave to file a second amended complaint.[6]

■ The filing of amended pleadings is governed by Rule 15, Federal Rules of Civil Procedure. Since Sackett had already amended his complaint once, and since Beaman did not consent to the filing of the proposed new pleading, Sackett could file a second amended complaint only by leave of court, and "leave shall be freely given when justice so requires." Rule 15(a), Fed.Rules Civ. Proc.

■ A motion to amend is addressed to the sound discretion of the court, and must be decided upon the facts and circumstances of each particular case. Caddy-Imler Creations, Inc. v. Caddy, 9 Cir., 299 F.2d 79, 84. But, as the Supreme Court said in Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222:

"In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"

The oral pronouncements of the district court in rejecting Sackett's motion to file the amended complaint are somewhat ambiguous and conflicting. But, as we understand them, the court thought that a second amendment of the complaint to state a claim for damages would be futile because barred by the statute of limitations or, alternative-

---

against enforcement of the first state judgment became moot on August 3 or 4, 1967, when Fidelity paid that judgment.

6. Beaman argues that this court is without jurisdiction to consider this matter because the judgment of dismissal contains no reference to the request for amendment or a denial thereof. But the judgment dismissed the action with prejudice, and this was erroneous if plaintiff was entitled to file and proceed on his second amended complaint. Thus the question of whether there was an abuse of discretion in denying leave to amend can be reviewed under the final judgment notwithstanding the fact that such judgment makes no ref-

erence to such denial. All interlocutory rulings merged in the final judgment and are reviewable on the appeal therefrom. See Atchison, T. & S. F. Ry. v. Jackson, 10 Cir., 235 F.2d 390, 392.

Gunther v. E. I. Du Pont De Nemours & Co., 4 Cir., 255 F.2d 710, 717, cited by Beaman, is not in point. In that case there were three judgments, but only one of them was mentioned in the notice of appeal. Here there was only one judgment. Moreover, the prior denial of Sackett's motion to file a second amended complaint was not a final decision and therefore was not independently appealable. See 28 U.S.C. § 1291 (1964).

ly, that the findings, conclusions and judgment proposed by Beaman would not prejudice Sackett if he wanted to file a separate action for damages.[7] The district court suggested no other reason, such as undue delay, or prejudice to Beaman, why he was denying Sackett's motion.

If, because of the statute of limitations, it would have been futile for Sackett to file a second amended complaint stating a claim for damages, it was not an abuse of discretion to deny leave to file that pleading.

One reason advanced by Sackett why the statute of limitations did not stand in the way of his proposed claim for damages is that the statute of limitations relied upon by the court, namely section 338(4) of the California Code of Civil Procedure, is not applicable.[8]

As before indicated, the suit before us is based on sections 17 and 22 of the Securities Act of 1933; sections 10 and 27 of the Securities Exchange Act of 1934; and Rule X–10B–5 of the Commission, 17 C.F.R. 240.10b-5.[9] The parties are in agreement that no federal statute provides any time limit on the commencement of private actions under these sections of the 1933 or 1934 Acts, or under the indicated Commission Rule.

In such cases, where the action is one at law, such as Sackett proposed in his second amended complaint, it is federal policy to adopt the local law of limitation. Holmberg v. Armbrecht, 327 U.S. 392, 395, 66 S.Ct. 582, 90 L.Ed. 743. In keeping with this policy, this court, in cases of this kind arising in California, applies the limitations provision of section 338(4) of the California Code of Civil Procedure. Turner v. Lundquist, 9 Cir., 377 F.2d 44, 46.[10]

We therefore conclude that the statute of limitations to be applied with respect to Sackett's proposed claim for damages is that which is set forth in section 338(4), California Code of Civil Procedure.

Sackett next argues that his proposed damage claim was not, when tendered, barred under this California statute of limitations because the claim was asserted within the statutory period.

The original complaint was filed on April 20, 1967, and the proposed second amended complaint was tendered to the district court on August 2, 1967.[11] Both of these dates are more than three years after December 30, 1961, when Sackett alleges that he discovered the facts concerning the alleged mistake or fraud in connection with the data supplied to him

---

7. However, there is uncertainty as to whether the district court really intended to base his action on this second alternative ground, inasmuch as he also expressed the view that a judgment for Beaman on the first amended complaint " * * * has the effect of cutting you off at the pocket completely, regardless of how I word it, for damages or equitable relief or anything else."

8. See note 4 above.

9. See note 1, above.

10. See also, Errion v. Connell, 9 Cir., 236 F.2d 447, 455, and Fratt v. Robinson, 9 Cir., 203 F.2d 627, 635, 37 A.L.R.2d 636, involving the Washington statute of limitations. As a holding to the contrary Sackett relies upon Fischback and Moore, Inc. v. International Union of Operating Engineers, S.D.Cal., 198 F.Supp. 911, 914–915. Even if the district court opin-

ion in *Fischback*, which did not involve the 1933 or 1934 securities acts, was otherwise unimpeached, it could not be given force as against the Ninth Circuit decisions referred to above. But the fact is that the district court judgment was reversed by this court. See International Union of Operating Engineers v. Fischback and Moore, Inc., 9 Cir., 350 F.2d 936.

11. We need not concern ourselves with the question of whether the damage claim relates back to the date of the original complaint (see Rule 15(c), Federal Rules of Civil Procedure). Under Sackett's theory the claim for damages did not accrue until August 1967, and both of these complaints were filed within three years of that date. Under Beaman's theory the claim accrued on December 30, 1961, which was more than three years prior to either the filing of the original complaint or the tendering of the second amended complaint.

prior to the November 8, 1961 agreement.

But Sackett argues that while these facts were discovered in 1961, the action did not accrue until August 1967.

Under section 17(a) (2) of the Securities Act of 1933, a violation occurs whenever a party "obtains money or property" by means of a prohibited statement or omission to state. Under Commission Rule X–10B–5, 17 C.F.R. 240.10b-5, implementing section 10 of the Securities Exchange Act of 1934, a violation occurs whenever a party engages in the proscribed activity "in connection with the purchase or sale of any security."

Sackett argues that his damage claim against Beaman under section 17(a) (2) of the 1933 Act therefore did not accrue until August 1967, when Beaman received $18,733.71 from Fidelity in satisfaction of the judgment in the first state action.[12] Similarly, he asserts that his damage claim against Beaman under section 10 of the 1934 Act did not accrue "until the fact of damage was definitely established, which was not before May 1965."

■ Sackett's thesis disregards the fact that, when the transaction took place on November 8, 1961, Sackett gave Beaman $1,000 and the promissory notes. When, at the end of December 1961, Sackett learned of the asserted mistake or fraud in alleged violation of the two federal statutes referred to above, relief under those statutes was immediately available in federal court.

Two courses of action were then open to him. He could have commenced an action under one or both of these acts requesting return of the purchase price then paid ($1,000 and the promissory notes), and cancellation of the contract of sale.[13] Or he could have commenced an action under one or both of these acts for damages under what may be called an out-of-pocket rule, namely, the difference between the real value of the property purchased at the date of its sale (which Sackett asserts was nothing) and the price paid for it, together with interest and associated outlays by the purchaser.[14]

It follows that it was not necessary for Sackett to wait until a state judgment on his promissory notes had been entered against him, or until Beaman enforced payment of that judgment, before commencing a federal court action under these Acts to recover damages and obtain other appropriate relief. We therefore conclude that the claim on which Sackett seeks recovery in this suit accrued in December, 1961.

Sackett further contends, however, that assuming that this claim accrued in December 1961, the running of the statute of limitations was suspended during the pendency of the first state court action.

As before stated, Beaman commenced his first state court action on January 24, 1962, and the judgment therein became final on May 22, 1967. Thus, under Sackett's theory, the running of the statute of limitations was suspended for all but about fifteen months of the period from December 1961, when the claim accrued, to August 1967, when the claim was first asserted in this suit.

12. Sackett observes that if it is considered that Beaman received "money or property" at the time of entry of this state judgment in May 1965, or when that judgment became final in May 1967, it would make no difference, since Sackett tendered his damage claim within three years of these dates.

13. See Matheson v. Armbrust, 9 Cir., 284 F.2d 670; Errion v. Connell, 9 Cir., 236 F.2d 447. See also Royal Air Properties, Inc. v. Smith, 9 Cir., 312 F.2d 210, 212.

14. See Janigan v. Taylor, 1 Cir., 344 F.2d 781, 786; Estate Counseling Service, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 10 Cir., 303 F.2d 527, 533. See also, Sigafus v. Porter, 179 U.S. 116, 125, 21 S.Ct. 34, 45 L.Ed. 113. Where it is the seller who is seeking recovery, some courts sanction a more liberal measure of damages than is contemplated by the out-of-pocket rule. See Myzel v. Fields, 8 Cir., 386 F.2d 718, 748–749. See generally, Note, 1968 Wash.U.L.Q. 165.

■ Sackett first argues that the running of the statute of limitations was suspended during the pendency of the first state action because, having elected to rescind in December 1961, he was precluded by the California doctrine of election of remedies from suing for damages assertedly based on affirmance of the contract, at least until his purported rescission was negated by the state court final judgment on May 22, 1967.

Whatever the rule in this respect may have been prior to 1961, no such California rule has existed since enactment, in that year, of California Civil Code, section 1692. See Millar v. James, 254 A.C.A. 570, 62 Cal.Rptr. 335, 337; Padula v. Superior Court, 235 Cal.App.2d 567, 45 Cal.Rptr. 500, 502. See also, Williams v. Marshall, 37 Cal.2d 445, 235 P.2d 372, 379. It follows that, even under state law, the running of the statute of limitations was not suspended by reason of any theory of election of remedies.[15]

In his reply brief Sackett argues that, as a matter of federal law, this action should be tolled during the pendency of the first state court action. Sackett relies on Burnett v. New York Central R. Co., 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed. 2d 941, wherein the Supreme Court held that, in a suit under the Federal Employers' Liability Act, a timely filing in a state court which was later dismissed for lack of venue served to toll the statute of limitations in that Act.

We find this contention to be without merit. Unlike *Burnett*, here Sackett is attempting to assert his federal cause of action for the first time some six years after the action accrued. Furthermore, unlike the uniform time bar expressed in the FELA limitations provision, no such uniform limitations provision is expressed for private actions based on the sections of the 1933 and 1934 Acts involved herein. Thus, a federal tolling principle is not necessary to accomplish uniformity. See International Union, UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 708, 86 S.Ct. 1107, 16 L.Ed.2d 192.

We conclude that the running of the statute of limitations was not suspended during the pendency of the first state action.

■ The considerations discussed above lead us to the view that the applicable statute of limitations barred Sackett from first asserting in federal court in August 1967, a claim for damages growing out of the November 8, 1961 transaction. It would therefore have been futile for Sackett to have filed his proposed second amended complaint and, for that reason, the district court did not abuse its discretion in denying leave to so do.[16]

■ Three days before the argument in this court, counsel for Beaman moved here for the allowance of a reasonable attorney's fee for services rendered in this action to defendant Beaman, in the district court and in this court. Counsel's asserted entitlement to such a fee is based upon a provision in the 1961 contract for sale of the stock, and in the promissory notes. Under the contract provision, in the event of breaches and defaults in that agreement by Sackett, Beaman had the right to collect the notes and Sackett was required to pay Beaman any and all reasonable attorneys' fees "by reason that [sic] suits are instituted on behalf of first parties [Beaman] to collect upon said notes." The two promissory notes in question contained essentially similar provisions.

15. What has just been said also requires rejection of Sackett's contention that, had he instituted this federal suit while the state action was pending, it would have prejudiced his rescission defense in the state action.

16. It is therefore unnecessary for us to consider defendant's additional contentions that the filing of the second amended complaint would also have been futile because Sackett's damage claim was foreclosed by principles of res judicata and collateral estoppel predicated on the findings, conclusions and judgment entered in the first state court action.

The case before us is not a suit instituted by Beaman to collect upon the notes. The provision of the contract and notes, relied upon by Beaman, do not expressly cover the matter of attorneys' fees in defending against an action to recover damages by reason of asserted violations of federal statutes. We are unwilling to so extend them, by implication, to cover such a suit as this. The motion is therefore denied.

Affirmed.