**William L. SMITH, Plaintiff,**

v.

**GUARANTY SERVICE CORP. et al.,
Defendants.**

**Dickens J. WRIGHT, Plaintiff,**

v.

**GUARANTY SERVICE CORP. et al.,
Defendants.**

**Nos. 50672, 50673.**

United States District Court,
N. D. California.

Dec. 30, 1970.

John H. Painter and Michael H. Ahrens, Bronson, Bronson & McKinnon, San Francisco, Cal., Leonard I. Schreiber, New York City, for plaintiffs.

Bryant M. Smith and John B. Dickson, Angell, Adams & Holmes, San Francisco, Cal., for defendants.

ORDER GRANTING PLAINTIFFS' MOTIONS TO AMEND COMPLAINTS AND DENYING DEFENDANT FIDELITY SAVINGS' MOTION FOR SUMMARY JUDGMENT

GERALD S. LEVIN, District Judge.

Plaintiffs each filed substantially similar complaints on January 28, 1969, alleging that A. C. Meyer, Jr., Philip H. Angell, Jr. and Guaranty Service Corporation ["Guaranty"] violated the Securities Exchange Act of 1934 (15 U.S.C. § 78a et seq.) and the Securities Act of 1933 (15 U.S.C. § 77a et seq.). Specific violations of Rule 10b–5 (17 C.F.R. 240.-10b–5) are alleged.

The court has taken under submission the motion of defendant Fidelity Savings & Loan Association ["Fidelity Savings"] for summary judgment in its favor and the motions of plaintiffs to amend their complaints by identifying Fidelity Savings as the First Doe named in the complaints and by adding Fidelity Financial Corporation ["Fidelity Financial"] as a defendant.

The facts giving rise to the present action may be summarized as follows. At the times here pertinent, plaintiff Smith was a director and/or officer of Peninsula Savings and Loan Association ["Peninsula"] and defendant First Peninsula California Corporation ["First Peninsula"] which owned all of the issued and outstanding stock of Peninsula. At the times here pertinent, defendant Meyer was the president and a director of Fidelity Savings and the president and a director of Guaranty, and defendant Angell was the Secretary and a director of both Fidelity Savings and Guaranty.

Plaintiffs allege that Meyer and Angell owned 90% of the issued and outstanding stock of First Peninsula and thus were in control of First Peninsula as well as Peninsula. Plaintiffs allege that Meyer and Angell together owned 80% of the outstanding stock of Guaranty and controlled it as their alter ego. Plaintiffs further allege that Meyer and Angell owned substantial amounts of the issued and outstanding stock of Fidelity, as did Guaranty, and that as a result Meyer, Angell and Guaranty were in control of Fidelity.

Plaintiffs also allege that Meyer and Angell planned to merge Peninsula with Fidelity and thereby dissolve First Peninsula and cause its stock to be distributed to its stockholders.

On or about August 2, 1968, Meyer discussed with Smith, who was acting on behalf of Wright and himself, a proposed merger of Peninsula with Fidelity Savings. Smith and Wright each then held 3.75% of the issued and outstanding stock of First Peninsula. It is alleged that on or about September 25, 1968, Meyer again discussed the proposed merger with Smith by telephone and represented that for tax reasons Meyer and Angell would need additional stock in Peninsula. Meyer allegedly advised Smith that in the proposed and upcoming merger Meyer and Angell would also be required to exchange their Peninsula stock for Fidelity Savings stock at a price of $35 per share and requested that Smith and Wright immediately exchange their First Peninsula stock for Fidelity stock at the same ratio. Plaintiffs each then transferred 18,750 First Peninsula shares to Guaranty in ex-

change for 3,321 shares of Fidelity Savings and indemnity agreements.

In fact, the exchange ratio, which was formalized shortly thereafter, proved to be substantially higher than that represented by Meyer, which fact plaintiffs allege Meyer and Angell knew earlier. Fidelity Savings had apparently been interested in a merger with Peninsula since early 1966, but had encountered problems in securing approval from the regulatory agencies. Eventually the regulatory powers did allow a merger of Peninsula, Fidelity Savings, and General Savings & Loan Association ["General"], which merger was approved on December 26, 1969, and consummated shortly thereafter.

Prior to the commencement of this action plaintiffs attempted to rescind the subject exchange by tendering all of the Fidelity stock received to Meyer, Angell and Guaranty. Meyer, Angell and Guaranty refused such tender.

Thereafter First Peninsula was liquidated and the outstanding shares of Peninsula were distributed to Guaranty pursuant thereto. Additionally, since the merger between Fidelity Peninsula and General had been consummated, the shares belonging to plaintiffs had been exchanged by their transferee, Guaranty, pursuant to the terms of that merger for Fidelity shares. Thereafter, Fidelity Financial, a savings and loan holding company, was formed and it exchanged its shares for those of Fidelity Savings held by Guaranty, obtaining virtually all of the shares of Fidelity Savings.

By their complaints plaintiffs prayed that the exchange by plaintiffs of First Peninsula shares for Fidelity Savings shares be rescinded; that plaintiffs be declared the owners of said First Peninsula shares; that defendants Meyer, Angell and Guaranty be adjudged to hold said shares of First Peninsula and all proceeds received therefrom and all securities into which such shares are converted in trust for plaintiffs; that First Peninsula issue to plaintiffs a certification for said shares of First Peninsula; and that Fidelity Savings be enjoined from issuing or delivering to anyone other than plaintiffs the certificates of stock of Fidelity to which plaintiffs claim they are entitled.

### 1. Plaintiffs' Motions to Amend

#### a. Plaintiffs' Motion to Name Fidelity Savings as First Doe

Although the motion of Fidelity Savings for summary judgment was the first motion noticed of those to be decided here, its disposition is largely dependent on the resolution of the plaintiffs' motions to amend, so we deal with plaintiffs' motions first.

In the original complaints, plaintiffs named Fidelity Savings as a defendant charged only passively (as a stakeholder) and not actively (as a wrongdoer). Plaintiffs now claim that pre-trial discovery has revealed facts sufficient to state a cause of action against Fidelity Savings as an active wrongdoer in that it is liable for the misrepresentations and nondisclosures of its president, Meyer. Accordingly, plaintiffs seek to have Fidelity Savings inserted as a defendant for the First Doe.

Fidelity Savings opposes such amendment on the grounds that to assert a new cause of action against it would be prejudicial because it did not pursue discovery actively on its own behalf since it was originally named only as a passive stakeholder; that the assertion of the new cause of action is barred by the applicable statute of limitations; and that amendment, even if allowed, cannot relate back to overcome the bar of the applicable statute of limitations.

We note at the outset that the applicable provision for determining plaintiffs' motions to amend is Rule 15 of the Federal Rules of Civil Procedure. The Federal Rules make no provision for Doe pleading, so we disregard such pleading herein as surplusage and consider the motions as ones to amend under the

standards of Rule 15. *See* Jarrett v. Resor, 426 F.2d 213, 215 n.3 (9th Cir. 1970); Craig v. United States, 413 F.2d 854, 856–857 (9th Cir. 1969), cert. den., 396 U.S. 987, 90 S.Ct. 483, 24 L.Ed.2d 451 (1969).

Where, as here, leave of court is necessary to amend, Rule 15(a) counsels that such leave "shall be freely given when justice so requires." This mandate is to be heeded. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L. Ed.2d 222 (1963); Roloff v. Arabian American Oil Company, 421 F.2d 240, 242 (2d Cir. 1970). Narrow pleading rules should not be applied to foil an honest plaintiff's efforts to gain redress. Middle Atlantic Utilities Co. v. S.M.W. Development Corp., 392 F.2d 380, 384 (2d Cir. 1968).

Of the factors which courts and commentators have heretofore considered relevant in deciding motions for amendment, most point in favor of granting plaintiffs' motion here.

■ Fidelity Savings, already having been named as a defendant, can hardly contend that it was unaware of the existence or character of the instant lawsuit or the possibility that the asserted liability might extend to it. Merely because plaintiffs did not state an affimative cause of action against Fidelity Savings in their original complaints does not bar them from doing so now based upon facts allegedly learned through discovery. *See* Woldow v. Edgemoor Realty Co., 81 F.Supp. 800, 802–803 (D. Del. 1949); 4 A.L.R. Fed. 123 Anno.: Pleadings—Amendment—Timeliness § 4 at 145–146 and cases cited therein. *Cf.* Porter v. Theo J. Ely Mfg. Co., 5 F.R.D. 317, 320–321 (W.D.Pa.1946). The attempt of Fidelity Savings to oppose the amendment because it characterizes the motion therefor as mere afterthought is also not well taken. Many amendments will be afterthoughts; often they will be necessary because counsel anticipates defeat on the initial complaint. Such realities alone do not support the denial

of a motion to amend. Middle Atlantic Utilities Co., *supra,* 392 F.2d at 385.

■ Moreover, while prejudice to the opposing party is obviously a major factor, the passage of time, without more, is not a sufficient basis for denying a motion to amend. A.L.B. Theatre Corporation v. Loew's Incorporated, 21 F.R.D. 584, 586 (N.D. Ill. 1957); Armstrong Cork Co. v. Patterson-Sargent Co., 10 F.R.D. 534, 535 (N.D. Ohio 1950). Such prejudice should amount at least to an undue difficulty in prosecuting the lawsuit as a result of the change in tactics or theories. *Cf.* Deakyne v. Commissioners of Lewes, 416 F.2d 290, 300 (3d Cir. 1969) (defining "prejudice" for purposes of Rule 15(b)). In Middle Atlantic Utilities Co., *supra,* 392 F.2d at 386, the defendant opposed a motion to amend on the ground that its allowance would necessitate further discovery and motions and would be expensive and time consuming. The appellate court, in reversing the denial of the motion to amend by the district court, considered any such resultant prejudice as inadequate to support a denial of the motion. Fidelity Savings has argued here that it has not pursued discovery as fully as it would have had it known it was being sued for its own active wrongdoing and has been prejudiced thereby. We note, however, that Fidelity Savings has been involved in the discovery proceedings in this case, and that any additional and necessary discovery needed to be made by Fidelity Savings upon the granting of the instant amendment will be considered upon proper application.

The question arises whether a sufficient cause of action has been stated against Fidelity Savings in order that it could be held liable for any securities fraud. Plaintiffs rely on agency theory and cite Johns Hopkins University v. Hutton, 422 F.2d 1124, 1130 (4th Cir. 1970), in which the court found the partners of a brokerage firm liable for a securities violation committed by an employee, although the partners had not

participated in nor had knowledge of the representations made by the employee. The court found that the partners had clothed the employee with actual and apparent authority to provide the information in question and that the employee had acted within the scope of his employment. The court concluded that as a result the partners were liable under familiar principles for the tortious representations of their agent. *See also* Reyos v. United States, 431 F.2d 1337, 1346–1347 (10th Cir. 1970).

■ Fidelity Savings has not sufficiently distinguished the *Johns Hopkins* case and has argued instead that in other cases where such derivative or indirect liability has been found the wrongdoer actually helped facilitate the violation or was the agent, not the principal, of the wrongdoer. We believe, however, that inquiry into the agency relationship of Meyer and Angell with Fidelity Savings should await later proceedings and does not provide a ground for denying plaintiffs' motion to amend.

■ The next objection raised by Fidelity Savings is that any substantive action as to it is barred from assertion now by the applicable statute of limitation. Fidelity Savings correctly states that since the gist of the violations alleged here is a Rule 10b–5 offense, and that since no statute of limitations is provided therefor, the court should look to the most appropriate statute of the forum state, California, to determine the proper period of limitations. *See* International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, A.F.L.–C.I.O. v. Hoosier Corp., 383 U.S. 696, 704–705, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); Hecht v. Harris, Upham & Co., 430 F.2d 1202, 1210 (9th Cir. 1970), aff'g. 283 F. Supp. 417, 441 (N.D. Cal. 1968); Vanderboom v. Sexton, 422 F.2d 1233, 1236–1237 (8th Cir. 1970); Sackett v. Beaman, 399 F.2d 884, 890 (9th Cir. 1968); Turner v. Lundquist, 377 F.2d 44, 46 (9th Cir. 1967).

Fidelity Savings proceeds to make a forceful argument that the most appropriate California statute of limitations is the one-year statute of the California Corporate Securities Law of 1968 (California Corporations Code § 25506) rather than the more general three-year statute governing actions sounding in fraud (California Code of Civil Procedure, § 338(4)) urged upon us by plaintiffs. Fidelity Savings' argument is based upon the premise that the provisions of the California Corporate Securities Law are related to and indeed based in part upon similar federal provisions. *See* W. Olson, "The California Corporate Securities Law of 1968," 9 Santa Clara Lawyer 75, 98 (1968). Thus, for example, neither Rule 10b–5 nor the parallel California provisions (California Corporations Code, §§ 25400–25402) require scienter.[1] California Code of Civil Pro-

---

1. The California securities fraud provisions evidently do not require proof of scienter. H. Marsh & R. Volk, Practice Under the California Corporate Securities Law of 1968, at 486 (1969); W. Olson, *op. cit.* at 97. Most federal courts, including the Ninth Circuit, which have dealt with the question have likewise taken the view that scienter is not required to prove a violation of Rule 10b–5, although the matter is not yet finally resolved. *See, e. g.,* Vanderboom v. Sexton, *supra,* 422 F.2d at 1238–1239; Hanly v. Securities and Exchange Commission, 415 F.2d 589, 596 (2d Cir. 1969); Royal Air Properties, Inc. v. Smith, 312 F.2d 210, 212 (9th Cir. 1962); Ellis v. Carter, 291 F.2d 270, 274 (9th Cir. 1961); Wellington Computer Graphics, Inc. v. Modell, 315 F.Supp. 24, 26 (S.D.N.Y.1970); Bromberg, Securities Law—Fraud—SEC Rule 10b–5, 12.9 at 283 (1967); Comment, "Scienter in Private Damage Actions under Rule 10b–5," 57 Geo.L.J. 1108, 1109 (1969).

A half-way position was adopted by the Second Circuit sitting en banc in Securities and Exchange Comm. v. Texas Gulf Sulphur Co., 401 F.2d 833 (2d Cir. 1968), cert. den., Coates v. Securities and Exchange Commission, 394 U.S. 976, 89 S. Ct. 1454, 22 L.Ed.2d 756 (1969). Judge

cedure, § 388(4), on the other hand, deals only with common law fraud, which *does* require scienter.

In Vanderboom v. Sexton, *supra,* the Eighth Circuit dealt with the problem in a case involving a complaint for common law fraud and deceit under Arkansas law and for securities fraud under federal legislation. In choosing between various statutes of limitations of the forum state under a Rule 10b–5 violation, the court noted that the standard to be used was that the statute of limitations should be chosen which best effectuates the federal policy at issue. *Id.* 422 F.2d at 1237, citing Charney v. Thomas, 372 F.2d 97, 100 (6th Cir.1967). The court was faced with a choice between a three-year Arkansas statute of limitations applicable to common law fraud and deceit and a two-year statute contained in the state's securities act. The court upheld the district court's decision to use the latter, since it dealt expressly with the sale of securities and thus bore the closest resemblance to the federal statute involved. *Id.* at 1237–1238.

■ Were this court to resolve the question as a matter of first impression, it might well find the approach of Vanderboom v. Sexton persuasive. Unfortunately for Fidelity Savings, however, the Ninth Circuit has addressed itself (if not in depth) to this question on several occasions and has uniformly applied California's three-year statute of limitations for fraud rather than that applicable to state securities' violations. Hecht v. Harris, Upham & Co., *supra*

430 F.2d at 1210; *Sackett, supra,* 399 F. 2d at 890; Turner v. Lundquist, *supra,* 377 F.2d at 46. In view of these last cited cases, this court feels bound to apply the three-year provision of California Code of Civil Procedure § 338(4) and thus finds that the amendment sought by plaintiffs to add a new cause of action against Fidelity Savings is not time-barred.

■ We note in passing that even were the shorter one-year limitation applied, it is not altogether clear that plaintiffs would be barred from asserting the new cause of action against Fidelity Savings in view of the "relation back" provision of Rule 15(c) of the Federal Rules of Civil Procedure. Rule 15(c) has been applied to defeat the bar of a statute of limitations. *See* Rural Fire Protection Company v. Hepp, 366 F.2d 355, 362 (9th Cir. 1966); 3 Moore's Federal Practice ¶ 15.15[3] at 1025–1026 (2d ed. 1968). *See generally* B. Kaplan, "Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)," 81 Harv. L.Rev. 356, 407–410 (1967). As summarized by Moore,

> Where plaintiff seeks to change the acpacity in which the action is brought, or in which the defendant is sued, there is no change in the parties before the court, all parties are on notice of the facts out of which the claim arose, and relation back has been allowed in both the case of the plaintiff and the defendant. [Footnotes omitted.] 3 Moore ¶ 15.15[4.–1] at 1039.

Waterman, writing for the majority, found that "some form" of scienter was still required to prove a violation of Rule 10b–5, whether termed "lack of diligence, constructive fraud, or unreasonable or negligent conduct * * *." *Id.* at 855. Judge Friendly noted in his concurring opinion, however, that the scienter requirement should be retained in its traditional form. *Id.* at 868.

Some authorities have viewed the above-cited cases as establishing a definite trend away from the requirement of scienter in

Rule 10b–5 cases, although a more accurate appraisal seems to be that with so relatively few decisions on the question no real trend is discernible. *See* City National Bank of Fort Smith, Ark. v. Vanderboom, 422 F.2d 221, 230 n. 9 (8th Cir. 1970); E. Gadsby, Federal Securities Exchange Act § 5.03 [1] [d] at 5–23 (1969); D. Epstein, "The Scienter Requirement in Actions under Rule 10b–5," 48 N.C.L.Rev. 482, 489 (1970); Note, "Scienter and Rule 10b–5," 69 Colum. L.Rev. 1057, 1082 (1969).

We believe that upon the facts of this case the proposed amendment naming Fidelity Savings as an active wrongdoer would relate back to the date of the filing of the original complaints so as to defeat the bar of any applicable statute of limitations.

b. *Plaintiffs' Motion to Add Fidelity Financial as a Defendant*

Plaintiffs .also seek to amend their complaints by adding Fidelity Financial as a defendant. Plaintiffs seek relief either by way of damages and/or shares of stock. Since all of the stock claimed by plaintiffs is now in the control of Fidelity Financial, the plaintiffs seek to add the latter as a defendant if it turns out that relief in the form of shares might be possible.

Fidelity Savings opposes the addition of Fidelity Financial as a defendant on the ground that no relief can be awarded plaintiffs as against Fidelity Financial since the shares of Fidelity claimed by plaintiffs were transferred to Guaranty by Fidelity Financial and cannot now be recovered. Fidelity Financial effected the transfer to Guaranty because plaintiffs did not seek a preliminary injunction or any other temporary relief which would prevent its having done so. Since it is possible, however, that relief might be awarded against Fidelity Financial in the form of a return of shares, plaintiffs' motion cannot be denied on that ground.

Generally, where the plaintiff seeks to add a new defendant, the courts have looked to such factors as the relationship between the new and old parties and whether the new party was on notice of the suit. United States for Use of Construction Specialties Co. v. Travelers Insurance Company, 40 F.R.D. 316, 317 (D.Colo. 1966); 3 Moore ¶ 15.-08[5] at 922. Here it is obvious that Fidelity Financial, incorporated as a holding company for Fidelity Savings after the institution of this action, is both related to other parties in the action and on notice of the proceedings herein. Accordingly, plaintiff's motion to add Fidelity Financial as a defendant is granted.

2. *Defendant Fidelity Savings' Motion for Summary Judgment*

Plaintiffs moved to amend their complaints following Fidelity Savings' motion for summary judgment, and both sides seem to recognize that the granting of plaintiffs' motions would be requisite to denial of Fidelity Savings' motion. This turns out to be true.

By granting plaintiff's motions to amend there remains in this case genuine issues of material fact concerning Fidelity Savings' possible liability to plaintiffs under the securities laws. Accordingly, the motion of Fidelity Savings for summary judgment is denied.

It is so ordered.