[Civ. No. 25772. First Dist., Div. Two. Apr. 27, 1970.]

GENEVIEVE A. SCHNEIDER, Plaintiff and Appellant, v.
UNION OIL COMPANY OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Williams, Herndon & Adams, Richard E. Herndon, and Williams, Van Hoesen & Brigham for Plaintiff and Appellant.

Brobeck, Phleger & Harrison and David W. Lennihan for Defendant and Respondent.

**OPINION**

**TAYLOR, J.**—Plaintiff appeals from a judgment of dismissal entered after the court sustained without leave to amend a general demurrer to her second amended complaint to establish her status as a stockholder of defendant, on the ground that the action was barred by the statute of limitations (Code Civ. Proc., § 338, subd. 3). The only question on appeal is whether the running of the statute was tolled by plaintiff's ignorance of defendant's unauthorized transfer of her shares of stock.

On an appeal from a judgment of dismissal sustaining a demurrer, all of the facts set forth in the pleadings must be accepted as true. Plaintiff's second amended complaint alleged the following: Between May 2, 1946, and January 4, 1954, for valuable consideration, defendant issued 468 shares of its capital common stock to plaintiff and her father, as joint

tenants, with right of survivorship. Plaintiff's father died on February 14, 1966, and she became the sole owner of all 468 shares.

About June 3, 1966, several months after the death of her father, who had possession of the stock certificates, plaintiff learned for the first time that in 1954, without notice to her and without her knowledge or consent, all 468 shares of common stock had been canceled and her name removed from defendant's share register. Plaintiff did not affix her signature to the purported assignment of the stock certificates and did not authorize or empower any person to do so. Apparently, plaintiff's father had, without her knowledge, forged her signature and caused the stock to be transferred to Harris, Upham and Company on April 9, 1954.

After defendant refused to accede to plaintff's demand for recognition and confirmation of her stock ownership and her rights and status as a stockholder, she commenced this action on April 20, 1967. Her second amended complaint set forth five causes of action: the first, to establish her status as a stockholder; the second, for an accounting ancillary thereto; the third, to quiet title to her shares; the fourth, for declaratory relief; and the fifth, in the alternative, for damages suffered by reason of defendant's breach of its fiduciary duty.

The demurrer filed by defendant asserted that plaintiff's cause of action was one for alleged conversion of shares of stock notwithstanding the fact that the relief sought may be equitable in nature and, therefore, the appropriate statute of limitations was the three-year period of Code of Civil Procedure section 338, subdivision 3.

Plaintiff's contentions on appeal are that since her action is based on defendant's breach of fiduciary duty, the applicable statute of limitations is the four-year period of Code of Civil Procedure section 343, and that the period here runs from the date of her actual discovery of the facts of the breach, regardless of the remedy sought. Plaintiff relies on *Bennett* v. *Hibernia Bank*, 47 Cal.2d 540 [305 P.2d 20], wherein the applicable law was set forth as follows, at pages 559 and 560: "The underlying theory is that a corporation holds its property in trust for the benefit of its shareholders and occupies a fiduciary position with respect to them; as a result the shareholder is entitled to assume that the corporation will not assert any adverse claim against him. [Citations.] In cases involving fraud or mistake the statute commences to run when the plaintiff discovers he has a cause of action or, through the use of reasonable diligence, should have discovered it. (See *Stafford* v. *Schultz*, 42 Cal.2d 767, 776 [270 P.2d 1].) However, a fiduciary has a duty to make a full and fair disclosure of all facts which materially affect the rights and interest of the parties, and, where a fiduciary relationship exists, facts which would ordinarily require

investigation may not excite suspicion. (*Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 440 [159 P.2d 958]; see *Schaefer* v. *Berinstein,* 140 Cal.App.2d 278, 296 [295 P.2d 113].)"

Defendant contends that: 1) conversion is the only legally tenable theory available to plaintiff here; 2) *Bennett* v. *Hibernia Bank, supra,* and similar authorities wherein the corporation participated in the fraud, are distinguishable; 3) its transfer of title to plaintiff's stock on a forged endorsement was nothing more than the performance of a purely ministerial task which should not be characterized as a breach of fiduciary duty; and 4) the burden of preventing transfers cannot be equitably imposed on a corporation as only a shareholder can guard against theft and forgery.

As to defendant's first contention, it is well settled that in this state, plaintiff has an election of remedies as a result of defendant's breach of fiduciary duty, with an action for damages for alleged conversion (*Payne* v. *Elliot,* 54 Cal. 339) as only one of the available alternatives. As noted in the *Bennett* case, *supra,* the relationship of a corporation to its stockholders is a fiduciary one in the nature of trusteeship. Accordingly, a corporation shares the duty of all trustees to protect, so far as the exercise of proper deliberation and care can, the interests of the beneficiary. Therefore, like any trustee, a corporation in transferring title to stock, acts at its peril (*Hurley* v. *Southern Cal. Edison Co.* (9th Cir. 1950) 183 F.2d 125; *Responsibilities and Liabilities of the Transfer Agent and Registrar,* 4 So.Cal.L.Rev. 203). When a corporation transfers title to stock on a forged or unauthorized endorsement or refuses to transfer title at the demand of the owner, it commits an action which is both one of conversion and breach of trust. Defendant's reliance on *Aronson* v. *Bank of America,* 9 Cal.2d 640 [72 P.2d 548], and *Bell* v. *Bank of California,* 153 Cal. 234 [94 P. 889], and similar authorities, is not helpful, as therein the plaintiffs either elected to sue for damages for conversion or did so because no other theory was available under the facts of the particular case. *Herbert Kraft Co. Bank* v. *Bank of Orland,* 133 Cal. 64 [65 P. 143], likewise does not support defendant's contention. In *Kraft,* a pledgee of stock maintained a suit in equity against the corporation which had sold the stock under a void assessment that it had no power to levy or enforce. The plaintiff sought to quiet title to the stock. The court, after noting at page 67, that a transfer on the books of the corporation without the consent of the holder under a forgery does not divest the real owner of his rights as a shareholder, held that equitable relief was available to the shareholder. The court specifically noted that while the plaintiff could have brought a suit for damages for conversion, it was not compelled to do so. There is no authority for defendant's contention that plaintiff's remedies are limited to conversion.

Furthermore, historically, the common law remedy of trover was available only for tangible personal property, not intangible shares of stock. As the modern action of conversion evolved, it became available as a remedy at law for unauthorized stock transfers, in addition to the basic equitable action to compel the corporation to recognize a stockholder (*Herbert Kraft Co. Bank* v. *Bank of Orland, supra; Payne* v. *Elliot, supra; Ralston* v. *Bank of California,* 112 Cal. 208, 212-213 [44 P. 476]; *Western Union Tel. Co.* v. *Davenport,* 97 U.S. 369 [24 L.Ed. 1047]). ▇ Significantly, the nature and extent of a plaintiff's recovery is substantially different, depending on the remedy chosen. If he sues for conversion, his damages are measured by the value of his stock as of the date of the wrongful transfer or refusal to transfer, with interest from that time. If he sues to establish his interest in the corporation, he is entitled to receive a new certificate as evidence of his stock ownership, together with all dividends declared thereon from and after the date of the wrongful transfer or refusal to transfer, with interest (*Herbert Kraft Co. Bank* v. *Bank of Orland, supra,* p. 68).

▇ The nature of the right sued on, not the form of action or relief demanded, determines the applicability of the statute of limitations (*Jefferson* v. *J. E. French Co.,* 54 Cal.2d 717 [7 Cal.Rptr. 899, 355 P.2d 643]). ▇ Plaintiff's cause of action is based on defendant's breach of its fiduciary duty to recognize her rights and status as one of its shareholders. Accordingly, the four-year period of Code of Civil Procedure section 343 would appear to apply. But even if we regarded this action as one of conversion and applied Code of Civil Procedure section 338, subdivision 3, plaintiff's cause of action would not accrue until she acquired knowledge of the breach of defendant's fiduciary obligation to her (*Bennett* v. *Hibernia Bank, supra*). In *Bennett,* as here, the corporation stood in a fiduciary relationship to the complaining shareholder and unsuccessfully argued that since there was, in fact, a conversion, the statute of limitations relating to conversion applied to bar that action.

Defendant's contention that the *Bennett* case is totally distinguishable because there the corporation participated in the fraud, is without merit. In the first place, the corporation in the instant case committed an unauthorized act in transferring title to plaintiff's stock. ▇ In the second place, the applicability of the fiduciary theory does not depend on the corporation's knowledge or bad faith. As indicated above, in transferring the stock, defendant, like any trustee, acted at its peril. In *Holly Sugar Corp.* v. *Wilson,* 101 Colo. 511 [75 P.2d 149], *Sharon* v. *Kansas City Granite & Monument Co.,* 233 Mo.App. 547 [125 S.W.2d 959], and *Hurley* v. *Southern Cal. Edison Co., supra,* the corporation, like defendant here, was the passive victim of fraud or negligence by a third party. In

each of these cases, as here, until demand was made on the corporation by the shareholder who, like plaintiff, had no knowledge or notice that the corporation had acted in derogation of his rights, the corporation had no means of discovering the fraud. In each instance, the courts held in favor of the shareholder and rejected the corporation's assertions that because of their own innocence, the action should be barred by the statute of limitations. ▮ In each, the court emphasized the shareholder's right to believe that the corporation would not assert a claim adverse to his rights until he had notice of some unequivocal act that his rights were being disputed. Similarly here, until plaintiff received such notice, she had the right to regard defendant as holding her interest in the corporation in trust for her.

As to defendant's next contention, the trustee status of the corporation prevents the transfer of shares from being a mere "ministerial act" that cannot be regarded as a breach of fiduciary duty. For its unique argument, defendant relies on a series of foreign authorities and contends that the trust theory is no longer compatible with the present-day realities of stock transfers. We cannot agree.

▮ Defendant also attempts to argue that plaintiff had notice of the transfer when she failed to receive annual dividends. But, as noted in *Bennett,* at page 563, where a fiduciary relationship exists, facts that would ordinarily require investigation do not give rise to a duty of inquiry. Significantly, in that case, the court held that open and notorious acts of the bank were not sufficient to put plaintiff on notice. Actual knowledge or notice was required in order to start the running of the statute of limitations. In the instant case, the complaint alleged that plaintiff had no notice or knowledge that the certificates had been transferred until after her father's death. And as stated in *Holly Sugar Corp.* v. *Wilson, supra,* at page 153, the debt a declared dividend creates on the part of a corporation is payable only on demand, and hence not subject to limitation until there has been a demand and a refusal to pay. In *Yeaman* v. *Galveston City Co.,* 106 Tex. 389 [167 S.W. 710], cited with approval in the *Bennett* case, the stockholder failed to receive dividends, but the court held that this did not constitute sufficient notice to start the running of the statute of limitations.

Finally, defendant asserts that the equities of the situation demand that the statute of limitations should not be tolled against it as the helpless victim of a third party's fraud, and that only the stockholder can guard against theft and forgery. This contention is answered by the rationale and the results reached in *Holly Sugar, Sharon* and *Yeaman, supra.* In many instances, a shareholder is powerless to prevent transfers on an unauthorized instrument. On the other hand, the corporation or its transfer agent is better

able to prevent theft and forgery and can also seek reimbursement from the person who guaranteed the signature and the person who presented the forged certificate for transfer. ■■■ As held in *Western Union Tel. Co.* v. *Davenport, supra,* at page 371, the corporation's (or transfer agent's) ignorance that a certificate is stolen and the signature forged, no matter how excusable, does not relieve the corporation of liability for the wrongful transfer.

The judgment of dismissal sustaining the demurrer is reversed.

Shoemaker, P. J., and Agee, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 24, 1970.