**Monroe KORN, Plaintiff,**

v.

**Fred H. MERRILL et al., Defendants.**

**No. 74 Civ. 1862.**

United States District Court, S. D. New York.

Oct. 31, 1975.

---

Kaplan, Kilsheimer & Foley, New York City, for plaintiff Monroe Korn.

Winthrop, Stimson, Putnam & Roberts, New York City, for defendants American Express Co., American Express Investment Management Co., and F. A. Liquidating Corp. (formerly The Fund American Companies).

Paul Weiss Rifkind Wharton & Garrison, New York City, for defendants William Wallace Mein, Jr. and George E. Osborne.

Simpson, Thacher & Bartlett, New York City, for defendant American Express Investment Fund, Inc.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff has instituted this derivative action on behalf of defendant, American Express Investment Fund, which prior to April 27, 1970, was known as the Commonwealth Investment Company. The action was commenced on April 29, 1974, and alleges violations of the Investment Company Act of 1940, 15 U.S. C. § 80a–1 et seq.; the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq.; the Investment Advisers Act of 1940, 15 U.S.C. § 80b–1 et seq.; and the rules and regulations issued pursuant to these statutes. Defendants have moved for an order, pursuant to F.R.Civ.P. 12(c) and 56(b), granting them judgment on the pleadings or summary judgment on the ground that the cause of action asserted in the complaint is barred by the statute of limitations.[1] The critical issue before the court is whether the undisputed facts in the record show, as a matter of law, that plaintiff cannot

---

1. Since affidavits and exhibits have been submitted on the motion, it will be treated as one for summary judgment.

successfully refute defendants' plea of limitations. Since we agree that he cannot, the motion is granted.

*The Complaint*

Monroe Korn is a New York resident and a shareholder of American Express Investment Fund, Inc. (Fund), an open-end investment company, since at least January, 1968. In 1968 and for several years prior thereto defendant Fund American Investment Management Company (FAIMCO), now known as the American Express Investment Management Company (AEIMCO), served as investment advisor to Fund pursuant to an investment advisory agreement between Fund and FAIMCO. In addition, pursuant to an underwriting agreement between Fund and FAIMCO, in 1968 and for several years prior thereto, FAIMCO also served as principal underwriter for shares of stock of Fund sold to the public on a continuous basis. FAIMCO was, at that time, a wholly-owned subsidiary of defendant, the Fund American Companies (FAC), now known as FA Liquidating Corporation.

The causes of action asserted arise out of the acquisition in the fall of 1968 of a newly formed and wholly-owned subsidiary of defendant American Express Company (AMEXCO) of substantially all the assets of FAC, including all the outstanding shares of FAIMCO, in exchange for shares of AMEXCO preferred stock, which shares were then distributed to the stockholders of FAC.

The pertinent facts gleaned from the complaint and various affidavits of the parties are as follows.[2] Fund is a Delaware corporation with principal offices in California. As of September 28, 1968, Fund had net assets of $192 million and some 27,000 shareholders. While the record is devoid of any breakdown as to New York and California addresses of Fund shareholders in 1968, the figures as of September 28, 1973, indicate that there were 7,643 California shareholders holding over seven million outstanding shares of Fund, and 2,345 New York shareholders holding over one-and-one-half million shares.

Both FAIMCO and FAC are California corporations with their principal offices in California. FAIMCO acted as investment adviser to Fund and as its principal underwriter for the continuous public sale of Fund stock. Pursuant to the advisory agreement entered into between FAIMCO and Fund, FAIMCO was to render investment advice to Fund, determine what securities Fund should buy and sell, and provide various management services to Fund including executive and other personnel, office space and equipment. As consideration for these services, FAIMCO received an annual advisory fee based on one-half of 1% of the average daily net assets of Fund up to $150 million, and $\frac{4}{10}$ths of 1% of the net assets in excess of that figure.

In 1968, AMEXCO, a New York corporation with its principal place of business in New York, entered into an agreement to acquire control of FAIMCO by acquiring substantially all of the assets of FAC. The agreement provided that AMEXCO would issue to FAC shareholders shares of its preferred stock having an aggregate value in 1968 of approximately $415 million. Consummation of the agreement was made dependent on the fulfillment of two conditions precedent: (1) that the Fund shareholders approve reinstatement of the advisory agreement between Fund and FAIMCO after the AMEXCO takeover; and (2) that the Fund Board of

2. For purposes of a motion for summary judgment, any doubt as to the existence of a genuine issue of material fact will be resolved in favor of the party opposing the motion. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Furthermore, facts asserted by the party opposing the motion, if supported by affidavits or other evidentiary material, will be regarded as true. *See, e. g., First National Bank of Cincinnati v. Pepper*, 454 F. 2d 626, 629 (2d Cir. 1972).

Directors approve reinstatement of the Fund-FAIMCO underwriting agreement.[3]

In August, 1968, Fund's Board approved reinstatement of the underwriting agreement, and authorized sending out a proxy statement with notice of the annual meeting on September 28, 1968, recommending approval of the reinstatement of the advisory agreement. The agreement, which constituted an effective merger of FAIMCO into American Express, was thereafter duly effectuated.

At the time when these negotiations took place and the merger with American Express was accomplished, defendants Fred H. Merrill, Reid W. Dennis, S. Waldo Coleman, Herbert E. Dougall, Wallace H. Fulton, William Wallace Mein, Jr., George E. Osborne, Philip A. Ray and Richard F. Tharp were directors of Fund. Dennis (president) and Tharp (vice-president) were officers of Fund. Merrill, Dennis and Tharp were also directors of FAIMCO, and Dennis (president) and Tharp (vice-president) were officers of that company. Merrill was a director of FAC and he (president) and Tharp (senior vice-president) were officers of FAC.

The gravamen of plaintiff's complaint is that FAIMCO, while Fund's investment advisor and a fiduciary of Fund, illegally sold its advisory status; that the proxy statement which was issued to Fund's shareholders in connection with the AMEXCO purchase of FAC assets (including FAIMCO) was false and misleading, and that the advisory and underwriting fees paid by Fund since the merger have been paid illegally and should be returned to Fund.

The complaint asks that defendants, other than Fund, be required to pay to Fund and its shareholders the profits earned on the sale of FAIMCO. Furthermore, the complaint also asks that the Investment Advisory Agreement and the Underwriting Agreement between FAIMCO and Fund be rescinded, and that FAIMCO, AEIMCO and AMEXCO be required to return all consideration received by them since the merger by virtue of these agreements.

*Discussion*

I. *The Statute of Limitations and the New York "Borrowing Statute"*

Defendants assert that this action, commenced on April 29, 1974, and based on a cause of action which accrued in 1968, is barred by the relevant California statute of limitations. Under the six-year New York statute of limitations,[4] however, the action would clearly not be barred.

As noted above, this action is brought under the Investment Company Act of 1940, 15 U.S.C. § 80a–1 et seq., the Investment Advisers Act of 1940, 15 U.S.C. § 80b–1 et seq., and the Securities Exchange Act of 1934, 15 U.S.C. §

---

3. Such approvals were required by the provisions of the Investment Company Act of 1940, 15 U.S.C. § 80a–15, since the change in controlling ownership of FAIMCO automatically terminated the existing investment advisory and underwriting agreements.

4. Where the federal cause of action being sued upon has no exact counterpart in state law, we are required to apply the limitations period of the state cause of action most closely analogous to the federal claims. *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); *Weinberger v. New York Stock Exchange*, 335 F.Supp. 139, 145 (S.D.N.Y.1971); *Hornblower & Weeks-Hemphill, Noyes v. Burchfield*, 366 F.Supp. 1364, 1367 (S.D.N. Y.1973). We find that the following provisions of New York C.P.L.R. § 213 (providing that actions must be commenced within six years) are the most directly applicable to the instant action:

8. an action by or on behalf of a corporation against a present or former director, officer or stockholder for an accounting, or to procure a judgment on the ground of fraud, or to enforce a liability, penalty or forfeiture, or to recover damages for waste or for an injury to property or for an accounting in conjunction therewith;

9. an action based upon fraud; the time within which the action must be commenced shall be computed from the time the plaintiff or the person under whom he claims discovered the fraud, or could with reasonable diligence have discovered it.

78a et seq. None of these federal statutory provisions allegedly violated by defendants incorporates a statute of limitations applicable to civil actions for their violation. Nor is there any general federal statute of limitations applicable to civil actions for the violation of federal statutes. In such instances where Congress creates a federal right but does not prescribe a period for its enforcement, the federal court will "borrow" the statute of limitations applicable under the law of the forum state.[5]

■ Such a reference to New York limitations law includes the borrowing statute. *Cope v. Anderson,* 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947); *Sack v. Low,* 478 F.2d 360, 365 (2d Cir. 1973); *Hornblower & Weeks-Hemphill, Noyes v. Burchfield,* 366 F. Supp. 1364, 1367 (S.D.N.Y.1973); *Skouras Theatres Corp. v. Radio-Keith-Orpheum Corp.,* 179 F.Supp. 163, 164 (S.D.N.Y.1959).

The New York borrowing statute, C. P.L.R. § 202 provides:

"An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply." [6]

Thus, New York will borrow the limitations law of a foreign state only where

(1) the cause of action being sued upon accrued outside of New York, and (2) the plaintiff is not a resident of New York. If either of these conditions is not met the borrowing statute will not apply, and under the facts of this case the six-year New York statute of limitations will govern, C.P.L.R. § 213, and plaintiff's claim will not be time-barred. We therefore proceed to examine each of these elements.

A. *Plaintiff's Residence*

■■ It is undisputed for purposes of this motion that plaintiff Korn is a New York resident.[7] Defendants assert, however, that the alleged cause of action accrued in favor of Fund—a non-resident of New York.[8] As such, defendants contend that the first requirement for the application of the New York borrowing statute has been met. We agree.

A derivative action is brought by one or more shareholders to enforce a right of a corporation, the corporation having failed to enforce such a right which may be properly asserted by it. See F.R. Civ.P. 23.1. The distinction between a derivative and an individual cause of action was described by Mr. Justice Frankfurter dissenting in *Swanson v. Traer,* 354 U.S. 91, 99, 77 S.Ct. 1119, 1 L.Ed.2d 1205 (1957), as follows:

"The contrasting difference between a stockholder's suit for his corporation and a suit by him against it, is crucial. In the former, he has no claim of his own; he merely has a personal controversy with his corporation re-

---

5. *UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 703–05, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); *Holmberg v. Armbrecht,* 327 U.S. 392, 395, 66 S.Ct. 582, 90 L.Ed. 743 (1946); *Klein v. Bower,* 421 F.2d 338, 342–43 (2d Cir. 1970); *Esplin v. Hirschi,* 402 F.2d 94, 101–03 (10th Cir. 1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *Moviecolor Ltd. v. Eastman Kodak Co.,* 288 F.2d 80, 83 (2d Cir.) *cert. denied,* 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961); *Fischman v. Raytheon Mfg. Co.,* 188 F.2d 783, 787 (2d Cir. 1951); *Saylor v. Lindsley,* 302 F.Supp. 1174, 1179 (S.D.N.Y. 1969).

6. The Revisers comment makes clear that the phrase "the state" has been used throughout the C.P.L.R. to mean New York. *See* Official Reports to Legislature, 6th Report Leg.Doc. (1962) No. 8, at 69.

7. Affidavit of Monroe Korn, sworn to August 21, 1974, given in opposition to defendants' motion for change of venue.

8. It is clear that a foreign corporation, even if qualified to do business in New York, is a nonresident for purposes of C.P.L.R. § 202. *American Lumbermens Mut. Cas. Co. of Ill. v. Cochrane,* 129 N.Y.S.2d 489, 491 (Sup.Ct.), *aff'd,* 284 App.Div. 884, 134 N.Y.S.2d 473 (1st Dept.1954), *aff'd,* 309 N.Y. 1017, 133 N.E.2d 461 (1956).

garding the business wisdom or legal basis for the latter's assertion of a claim against third parties. Whatever money or property is to be recovered would go to the corporation, not a fraction of it to the stockholder. When such a suit is entertained, the stockholder is in effect allowed to conscript the corporation as a complainant on a claim that the corporation, in the exercise of what it asserts to be its uncoerced discretion, is unwilling to initiate. This is a wholly different situation from that which arises when the corporation is charged with invasion of the stockholder's independent right."

▪ Thus, it is well established that an action to redress injuries to a corporation, whether arising out of contract or tort, cannot be maintained by a stockholder in his own name but must be brought in the name of the corporation, since the cause of action being in the corporation, the stockholder's rights are merely derivative and can be asserted only through the corporation. *See, e. g.*, *Schaffer v. Universal Rundle Corporation*, 397 F.2d 893, 896 (5th Cir. 1968).

▪ It follows from this general principle that a shareholder suing on behalf of a corporation is possessed of no greater rights than those which the corporation itself possesses. Thus, if an action by the corporation would be barred, suit by the stockholder would likewise be barred. *Drews v. Eastern Sausage & Provision Co.*, 125 F.Supp. 289, 291 (S.D.N.Y.1954).

▪ In *Drews v. Eastern Sausage & Provision Co., supra*, plaintiff sued individually on four causes of action and as a shareholder on behalf of certain corporations on four other causes of action. The Court found that the statute of limitations was tolled on plaintiff's individual claims during the time he was an enemy alien and hence unable to bring suit. The derivative causes of action were, however, held to be barred:

"It is commonly said that in a stockholders' suit the cause of action 'belongs to the corporation', not to the stockholders individually or collectively, and that the instigator of the action on behalf of the corporation is a mere nominal plaintiff. Recovery is on behalf of the corporation, the shareholder can enforce only such claims as the corporation itself could enforce, and it follows that if an action by the corporation is barred, suit by the stockholder is barred."

125 F.Supp. at 291 (citations omitted.)[9]

▪ We therefore hold that for purposes of the application of the New York borrowing statute, C.P.L.R. § 202, to a stockholder's derivative suit, the cause of action accrues "in favor of" the corporation and not the shareholder plaintiff. *See Norte & Co. v. Krock*, CCH Fed.Sec.L.Rep. ¶ 92,295 n. 8 (S.D.N.Y.1968).[10] Were we to hold otherwise, "the distinction between a stock-

---

9. Further evidence in support of the proposition that the cause of action in a derivative suit accrues on behalf of the injured corporation rather than the plaintiff shareholder is found in the venue requirements for a stockholder's derivative action. 28 U.S.C. § 1401 provides:

"Any civil action by a stockholder on behalf of his corporation may be prosecuted in any judicial district *where the corporation might have sued* the same defendants". (Emphasis added).

Thus, while ordinarily plaintiff's choice of forum is entitled to great weight, it is recognized that that choice is accorded little significance in a derivative action since it is, in essence, the corporation's and not the individual plaintiff's cause that is being sued upon. *Koster v. Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 522, 67 S.Ct. 828, 91 L. Ed. 1067 (1947); *Schlusselberg v. Werly*, 274 F.Supp. 758, 763 (S.D.N.Y.1967). It is therefore obvious that the venue statute is not concerned with facilitating suit in the district of the shareholder's residence, but assures only that suit can be brought in any district in which the corporation could have sued. *Koster, supra*, 330 U.S. at 522 n. 2, 67 S.Ct. 828.

10. *But see, Saylor v. Lindsley*, 302 F.Supp. 1174, 1180 n. 10 (S.D.N.Y.1969).

holder's derivative claim and a claim exercised in his primary right would disappear, and the public policy based strictures on derivative suits could be avoided merely by asserting that economic harm to a corporation in itself constituted justiciable personal injury to each owner of stock in the corporation." *Ash v. International Business Machines, Inc.,* 353 F.2d 491, 494 (3rd Cir. 1965), *cert. denied,* 384 U.S. 927, 86 S.Ct. 1446, 16 L.Ed.2d 531 (1966). Since Fund is a Delaware corporation with its principal place of business in California, and has never qualified to transact business in New York, the first test for the application of C.P.L.R. § 202 has been met.[11]

B. *Where the Cause of Action Accrued*

In *Sack v. Low,* 478 F.2d 360, 365 (2d Cir. 1973), the court found

that in an action for fraud and deceit based on violations of federal securities laws, the New York courts would follow the rule of the First Restatement of Conflicts that "when a person sustains loss by fraud, the place of wrong is where the loss is sustained, not where fraudulent representations are made." [12] The court went on to suggest that its position was in line with the weight of authority in other jurisdictions which generally adopted the view of the First Restatement of Conflicts "that a cause of action for fraud arises where the loss is sustained and that loss from fraud is deemed to be suffered where its economic impact is felt, normally the plaintiff's residence." Id., at 366, and cases there cited.[13] Since Fund has its principal place of business in California, and since its economic loss, if any, would be fo-

11. Plaintiff contends that FAIMCO (and its successor AEIMCO), Fund's investment advisor, had an office in New York and that it is a material issue of fact whether Fund, which had no employees of its own, may, through FAIMCO, be considered a New York resident for purposes of C.P.L.R. § 202. This contention is without merit. Even assuming the correctness of plaintiff's factual allegations, as we must for purposes of this motion, it is well settled that a foreign corporation (i. e., a corporation created under the laws of a state other than New York, C.P.L.R. § 105(g)), is treated as a non-resident for purposes of C.P.L.R. § 202. *See* note 7, *supra.* Fund, as noted above was at all relevant times a Delaware corporation with its principal place of business in California. FAIMCO (and AEIMCO) has at all relevant times been a California corporation with its principal place of business in California.

12. 478 F.2d at 365, citing First Restatement of the Conflict of Laws § 377, note 4 (1934). While the court recognized "that the rigid rules of the First Restatement have been largely discredited as a sensible approach to solving choice of law problems", 478 F.2d, at 366, the court nonetheless felt that the more flexible, interest-balancing approach of *Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963), and its progeny would not apply to the problem where a cause of action arose for purposes of the borrowing statute. *See, Note; Choice of Law and the New York Borrowing Statute; A Conflict of Rationales,* 35 Albany L.Rev. 754, 762 (1971).

13. Even if we were to ignore the situs of the injury test as set forth in *Sack v. Low, supra,* and instead adopt a test based on the place where the alleged wrongful acts were committed, the cause of action asserted by plaintiffs may nonetheless be said to have accrued in California. There is no dispute that the following transactions which are complained of in this action occurred in the state of California: (1) The Agreement and Plan of Reorganization dated as of July 22, 1968 between AMEXCO and FAC, pursuant to which a wholly-owned subsidiary of AMEXCO acquired the shares of FAIMCO, became a binding agreement upon the parties when executed by Fred H. Merrill on behalf of the AMEXCO subsidiary and Robert P. J. Cooney on behalf of FAC, in the offices of FAC in California on September 16, 1968. (2) The meeting of the Board of Directors of Fund, at which a new underwriting agreement between FAIMCO and Fund was approved, took place in California on June 18, 1968. At this meeting the Board of Directors of Fund also resolved to recommend to the stockholders of Fund that a new investment advisory agreement between Fund and FAIMCO be approved. (3) The proxy material of Fund for the special meeting of its stockholders held September 24, 1968, was prepared in California, and was mailed from California on or about August 16, 1968. The meeting itself was held in California on September 24, 1968. (4) The new investment advisory agreement between Fund and Faimco and the new underwriting agreement between Fund and FAIMCO were executed in California on October

cused there, we hold that for purposes of C.P.L.R. § 202 the plaintiff's cause of action accrued in California.[14] Since both requirements of § 202 have been met, California limitations law will govern the timeliness of this action.

## II. *The California Statute of Limitations*

Section 338 of the California Code of Civil Procedure specifies a three-year limitations period for:

"1. An action upon a liability created by statute, other than a penalty or forfeiture.

. . . . . .

"4. An action for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

In *United California Bank v. Salik*, 481 F.2d 1012 (9th Cir.), *cert. denied*, 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240 (1973), the court applied the three-year fraud statute of limitations of § 338(4) to an action under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). *See also, Smith v. Guaranty Service Corp.*, 51 F.R.D. 289, 294–

31, 1968. (5) The closing between AMEXCO and FAC, pursuant to which substantially all the assets of FAC, including the outstanding shares of FAIMCO, were transferred by FAC to a newly formed subsidiary of AMEXCO in exchange for the securities of AMEXCO, took place in California on October 31, 1968. (See Affidavit of Fred H. Merrill, at 4–5).

While it is true that numerous negotiations concerning the merger took place in New York and that various attorneys, accountants and other personnel who worked on the merger for American Express were located in New York, this is insufficient to negate the overwhelming evidence that the activities complained of were carried out primarily in California.

Finally, we note that even if this action may be thought of as having accrued both in New York and California, the Second Circuit has indicated that the cause of action is still deemed to have accrued "without the state" for purposes of C.P.L.R. § 202. Thus, in *Sack v. Low, supra*, the court noted:

"The conclusion the plaintiffs would apparently have had us draw is that since the cause of action could be said to have accrued in both states, the borrowing statute would not apply. However, application of the statute depends on whether it can be said that the cause of action accrues 'without the state,' and if it could fairly be said that the cause of action arose in both New York and Massachusetts, then, under the letter of the borrowing statute, the action would be barred.

. . . . .

There is much to be said for thus recognizing that a cause of action can arise in more than one place and, under an appropriate borrowing statute, is barred if the

statute of limitations has run in one where the defendant was available for suit, at least when the one is the state of plaintiff's residence. Such a rule avoids the mechanical nature of the single place of arising theory, allows the defendant to ascertain the applicable time period with certainty while affording the plaintiff a fair opportunity to sue in a convenient forum, and prevents local courts from being cluttered with actions that could have been brought elsewhere but are now time-barred there . . . ." 478 F.2d at 368.

It is clear that this case might have been brought in the Northern District of California. All the named individual defendants and over one-third of the FAC shareholders reside there. All the corporate defendants, except American Express, have their principal place of business there, and American Express, although a New York corporation, is doing business in the Northern District of California, maintains offices there and is amenable to service of process there.

14. Fund, on whose behalf this action has been brought has, at all relevant times, been a Delaware corporation with its principal place of business in California. Plaintiffs apparently concede that if foreign law is to govern the limitations period then it is California limitations law that must be looked to. Nevertheless, even were we to apply the Delaware statute of limitations, this action would nonetheless be barred by the three year statute of limitation, § 8106 of Title 10 of the Delaware Code. The three year statute of limitations has been held to apply to shareholder derivative actions which seek recovery of damages or other essentially legal relief. *Halpern v. Barran*, 313 A.2d 139 (Del.Ch.1973).

295 (N.D.Calif.1970). This three-year statute has been applied in the context of other securities law violations as well. *See, Hecht v. Harris, Upham & Co.,* 430 F.2d 1202, 1210 (9th Cir. 1970) (Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a); Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a)); *Sackett v. Beaman,* 399 F.2d 884, 890 (9th Cir. 1968) (Sections 17 and 22 of the Securities Act of 1933, 15 U.S.C. §§ 77q and 77v, and Sections 10 and 27 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j and 78aa, and Rule X–10B–5 of the Commission, 17 C.F.R. 240.106–5); *Turner v. Lundquist,* 377 F.2d 44, 46 (9th Cir. 1967) (Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q). *See also, Royal Air Properties, Inc. v. Smith,* 312 F.2d 210, 214 (9th Cir. 1962); *Errion v. Connell,* 236 F.2d 447, 455 (9th Cir. 1956); *Fratt v. Robinson,* 203 F.2d 627, 634–35 (9th Cir. 1953).

 *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946) held that where a cause of action is federally created but the limitations law of the forum state is looked to, and the action is equitable in nature, federal law will apply in determining the date on which the statute of limitations begins to run. This doctrine was extended in *Moviecolor Limited v. Eastman Kodak Company,* D.C., 288 F.2d 80, 85 (dictum), *cert. denied,* 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961) to include cases at law as well as equity. It has generally been held that the statute of limitations will begin to run only from the date of the discovery of the fraud or from the date the fraud should upon reasonable inquiry have been discovered. *See, e. g., Janigan v. Taylor,* 344 F.2d 781 (1st Cir.), *cert. denied,* 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965); *Vanderboom v. Sexton,* 422 F. 2d 1233, 1240 (8th Cir. 1970). In any event, the "federal" rule for the commencement of the limitations period is identical with California doctrine. *See, e. g., Turner v. Lundquist,* 377 F.2d 44, 46–47 (9th Cir. 1967); *Von Brimer v. Whirlpool Corp.,* 367 F.Supp. 740, 745 (N.D.Cal.1973); *Boeseke v. Boeseke,* 31 Cal.App.3d 462, 107 Cal.Rptr. 353, 358 (Ct.App.1973), *aff'd,* 10 Cal.3d 844, 112 Cal.Rptr. 401 (1974); *Schneider v. Union Oil Co. of California,* 6 Cal.App.3d 987, 86 Cal.Rptr. 315 (Ct.App.1970); *Helfer v. Hubert,* 208 Cal.App.2d 22, 24 Cal.Rptr. 900 (Ct.App.1962).

 The record reveals, and plaintiff has not denied, the existence of numerous facts sufficient in the view of this court as a matter of law to have put plaintiff upon notice and inquiry, and to have caused him to commence the running of the period of limitation.[15]

 Plaintiff also brings a cause of action founded upon the alleged breach by FAIMCO of its fuduciary duty as investment advisor to Fund.[16] Such a cause of action is governed by the residual four-year statute of limitations of § 343 of the California Code of Civil Procedure.[17] *Schneider v. Union Oil Co. of California,* 6 Cal.App.3d 987, 86 Cal. Rptr. 315, 317 (Ct.App.1970).

 While it is true that the basic standard for determining which of

15. Despite the fact that the events which give rise to plaintiff's cause of action have been public knowledge since 1968 as a result of the proxy statements of Fund, AMEXCO and FAC describing the acquisition complained of, plaintiff in his 9(g) statement, contends that "only some of the facts constituting the alleged wrongdoing complained of have been public knowledge since 1968." Nowhere in his papers, however, does plaintiff adduce any evidence in support of this contention. Such vague and conclusory allegations are insufficient to meet the requirements of Rule 56. *See, e. g., Dressler v. The MV Sandpiper,* 331 F.2d 130 (2d Cir. 1964); *D. M. & Antique Import Corp. v. Royal Saxe Corp.,* 311 F.Supp. 1261, 1266 (S.D.N.Y.1969).

16. Complaint, ¶ 16.

17. § 343 provides as follows:
"ACTIONS FOR RELIEF NOT HEREINBEFORE PROVIDED FOR. An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued."

the various local periods of limitations is the appropriate one to apply is that it should be the "one which best effectuates the federal policy at issue," *Charney v. Thomas*, 372 F.2d 97, 100 (6th Cir. 1967); *Vanderboom v. Sexton*, 422 F.2d 1233, 1237 (8th Cir. 1970), such a choice is unnecessary in the instant case, since regardless of the characterization of plaintiff's causes of action, each is barred by the California statute of limitations.

## III. *The Continuing Injury Claim*

The damages plaintiff seeks in this action are in two parts. Plaintiff first seeks to recover the allegedly illegal profits earned by defendants as a result of the 1968 sale of Fund's investment advisor. In addition, plaintiff seeks, on behalf of Fund, the return of all consideration in the form of investment advisory and underwriting fees paid by Fund to FAIMCO (and its successor AEIMCO) since the merger, and which Fund continues to pay. It is plaintiff's contention that even if a cause of action to recover profits from the 1968 sale of FAIMCO, and damages for the allegedly defective 1968 proxy statement is barred by the California statute of limitations, the continuing payments under the Fund-FAIMCO agreements are nonetheless actionable. It is clear, however, that these payments do not constitute independent wrongs but rather flow from the reinstitution of the Fund-FAIMCO agreement in 1968 as part of the AMEXCO–FAC merger deal. No independent event subsequent to the sale of FAIMCO in 1968 has been complained of in this action.[18]

In effect, plaintiff is attempting to convert what would otherwise be an element of damages flowing from an alleged wrong no longer actionable because of the statute of limitations bar, into a series of independent and continuing injuries.

In *Lowell Wiper Supply Co. v. The Helen Shop, Inc.*, 235 F.Supp. 640, 644 (S.D.N.Y.1964), plaintiffs brought a derivative action on behalf of The Helen Shop alleging that the chief executive officer of the corporation had improperly availed himself of a corporate opportunity by entering into certain leases of property in 1954, and then subletting such property to the corporation at excessive rentals, in breach of his fiduciary duty. Plaintiffs' action was commenced in 1963 and was challenged as untimely in the face of a six-year statute of limitations. Plaintiffs nonetheless contended that the alleged excessive rental payments under the subleases were continuing and independent wrongs, such that recovery could be had for those transactions which had occurred within the limitations period.

The court refused to adopt plaintiff's argument stating:

"The courts of New York have consistently rejected the theory advanced by plaintiffs that each payment pursuant to a wrongful agreement gives rise to a separate and distinct claim, whether the theory was invoked to establish capacity of a shareholder to sue or to overcome the bar of a statute of limitations. The continued payments merely reflect the damages sustained by the party wronged." [19]

---

18. The investment advisory agreement between Fund and FAIMCO (AEIMCO) was re-approved annually by the Board of Directors and shareholders of Fund. Defendants' Reply Memorandum, at 9. While a cause of action may exist based on these subsequent approvals—an issue which we need not reach—plaintiff's complaint does not seek to attack the validity of these agreements on the basis of events occurring subsequent to the completion of the merger.

19. Similarly, limitations on civil and criminal conspiracy run from the last overt act, al-

though damages continue to flow from the condition created by the conspiracy. *See, e. g., Rutkin v. Reinfeld*, 229 F.2d 248 (2d Cir.), *cert. denied*, 352 U.S. 844, 77 S.Ct. 50, 1 L.Ed.2d 60 (1956); *Saunders v. National Basketball Ass'n*, 348 F.Supp. 649, 652–53 (N.D.Ill.1972); *Lowell Wiper Supply Co. v. The Helen Shop, Inc.*, 235 F.Supp. 640, 644 (S.D.N.Y.1964); *Skouras Theatres Corp. v. Radio-Keith-Orpheum Corp.*, 193 F.Supp. 401, 405–06 (S.D.N.Y.1961). *See generally,* Developments in the Law—Statute of Limitations, 63 Harv.L.Rev. 1177, 1206 (1950).

235 F.Supp. at 644 (footnotes omitted).

The rationale of the *Lowell* case is fully applicable here. Consequently, we are constrained to grant defendants' motion in its entirety.

So ordered.