John D. ROBUCK, Appellant,

v.

DEAN WITTER & CO., INC., a corporation, Appellee.

John D. ROBUCK, Appellant,

v.

DEAN WITTER & CO., INC., a corporation, Appellee.

Nos. 77–1841, 77–1842.

United States Court of Appeals, Ninth Circuit.

March 7, 1980.

C. Edward Simpson, Jones, Bell & Simpson, Los Angeles, Cal., for appellee.

Before GOODWIN and KENNEDY, Circuit Judges, and HILL,* District Judge.

* The Honorable Irving Hill, United States District Judge for the Central District of California, sitting by designation.

GOODWIN, Circuit Judge:

An investor disappointed by events that wiped out his margin account sued his investment advisor, Dean Witter, for damages. The district court held the action barred by California's statute of limitations and not proved on the merits. This appeal challenges both rulings.

In October of 1968, Robuck, the investor, told Thompson, an account executive with Dean Witter, that he wanted to make a low-risk investment that would produce above-average returns. After conferring with the firm's research department, Thompson recommended Ling-Temco-Vought (LTV) bonds, which were selling at a depressed price due to high interest rates. Robuck purchased, on a margin account, approximately 200 LTV $1,000 bonds (at about $680 per bond). In early November 1968, he purchased another 100 LTV bonds, again on margin (at about $650 per bond). Robuck's purchases brought the account to a quoted value of approximately $287,000, with an equity position of about $145,000.

Thereafter, Robuck received monthly statements from Dean Witter showing the status of his various accounts, all transactions in them, and the amount of his margin debt. Robuck also had access to the daily newspapers, of course, in which were recounted the daily trading values of each security he held and particularly of the bonds in his margin account.

The market price of the bonds declined steadily after Robuck's first purchase. On several occasions, Robuck called Thompson to express his concern over the drop in price. On each occasion Thompson either assured Robuck that the price would increase, or that the bond investment was generally sound. Nonetheless, in September 1969, after one of his discussions with Thompson, Robuck sold 120 of his LTV bonds, and invested in other bonds, at a loss of approximately $22,000. At trial, on cross-examination, Robuck admitted that as early as September 1969 he considered that Dean Witter's advice and projections about the economy, and about the LTV bonds, was wrong. Robuck also admitted that as early as 1969, he was dissatisfied with the way Dean Witter was handling his account.

Between September 1969 and May 1970, in the midst of a severe market slump, Dean Witter made four margin calls on Robuck's account. Each margin call prompted Robuck to demand an explanation from Thompson. Thompson attributed two margin calls in late 1969 to bookkeeping errors, but Robuck was asked to satisfy the calls with additional funds until the mistakes were corrected. He complied. Concerning April and May 1970 margin calls, Thompson again stated that a bookkeeping error was responsible; at these times, however, Robuck paid no additional funds into the account.

On May 27, 1970, Dean Witter liquidated Robuck's account because he failed to meet the margin calls of April and May, and because the equity in his accounts had fallen below his indebtedness to Dean Witter. Liquidation left a negative balance in favor of Dean Witter of $8,027.40.

Robuck's complaint against Dean Witter, filed May 22, 1973, alleged three counts: (1) violations of section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5; (2) fraud and, as discussed below, perhaps breach of fiduciary duty under state law; and (3) violations of section 17(a) of the Securities Act of 1933, and of the rules of the New York Stock Exchange (NYSE) and National Association of Securities Dealers (NASD).

After a nonjury trial, the court found that by May 21, 1970, Robuck knew, or in the exercise of reasonable diligence should have known, all the facts he relied upon to support his fraud claims. The court therefore held the entire action barred by the three-year California statute of limitations for fraud, Cal.Civ.Proc.Code § 338(4) (West). The conclusions of law filed by the court also declared that Robuck's claims were invalid on the merits. (The court held for Dean Witter on its counterclaim for the balance due on Robuck's account, a ruling that Robuck does not appeal.)

■ Under the California statute of limitations for fraud, the three-year period does not begin to run until the plaintiff has actual or constructive notice of the facts constituting the fraud. Constructive notice is knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry. *National Automobile and Casualty Insurance Co. v. Payne*, 261 Cal.App.2d 403, 408–09, 67 Cal.Rptr. 784 (1968). In this circuit the limitations period for claims arising under the antifraud provisions of the federal securities laws in California begins to run at the same time as does the California period for fraud. *See Rochelle v. Marine Midland Grace Trust Co.*, 535 F.2d 523, 531 (9th Cir. 1976); *Turner v. Lundquist*, 377 F.2d 44, 46–47 (9th Cir. 1967).

The trial judge's finding of fact that Robuck had constructive notice of any fraud by May 21, 1970, can be set aside only if it was clearly erroneous. Fed.R.Civ.P. 52(a); *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); *deLaurier v. San Diego Unified School District*, 588 F.2d 674, 679 (9th Cir. 1978). The record as a whole creates conflicting inferences about this issue, but it does not show that the trial judge's finding was clearly erroneous. Therefore, we must affirm the judgment in its entirety unless application of the three-year statute of limitations for fraud to all three of Robuck's claims was improper as a matter of law. We conclude that the three-year statute was properly applied to any claims arising under federal law and the exchange rules.

■ Our rule for federal causes of action with no federal limitations period is to look to the state statute of limitations applicable to the most similar state-law cause of action. *E. g., Briley v. California*, 564 F.2d 849, 854 (9th Cir. 1977). An action for damages charging a violation of the antifraud provisions of the federal securities laws most resembles an action for fraud, for in order to trigger liability, both must include a showing of intentional or reckless conduct. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Hence, plaintiff's causes of action for violations of federal law, and for violations of any NYSE and NASD rules proscribing fraud must be governed by the three-year fraud statute, section 338(4). *See, United California Bank v. Salik*, 481 F.2d 1012, 1015 (9th Cir.), *cert. denied*, 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240 (1973); *Sackett v. Beaman*, 399 F.2d 884, 890–91 (9th Cir. 1968); *Turner v. Lundquist, supra*. To the extent that some of the exchange rules require "due diligence" on the part of a broker, rather than merely refraining from fraudulent acts, any cause of action arising under them would be barred by the two-year state statute of limitations for negligence, Cal.Civ.Proc. Code § 339 (West). *See Rochelle v. Marine Midland Grace Trust Co., supra.*[1]

■ We must, however, remand the state-law claims for further proceedings. If all of plaintiff's state-law claims are governed by the three-year statute of limitations for fraud, then these as well as the federal claims are barred. Cal.Civ.Proc. Code § 343 (West), however, establishes a four-year limitations period for all types of actions not specifically addressed by another limitations section. Cal.Civ.Code § 2219 deems all who voluntarily assume relations of personal confidence to be "trustees," and there is a separate cause of action for breach of trust. *See, Kornbau v. Evans*, 66 Cal.App.2d 677, 685–86, 152 P.2d 651 (1944). Therefore, if one of plaintiff's state law theories was grounded in a claim that Dean Witter breached a fiduciary duty to Robuck, then the four-year period would apply, not the three-year period governing actions based solely on fraud. If, as discussed below, the issues of fiduciary duty and the four-year limitations period were properly before the district court, then it is possible that Robuck need not have alleged a state-law count for breach of fiduciary

1. We express no opinion whether private rights of action exist for violations of section 17(a) of the 1933 Act or the NYSE and NASD Rules. Even if such rights exist, Robuck's action asserting them would be time-barred.

duty independently of his fraud action.[2] We think it inappropriate, however, to address this issue on this record, since it is not clear that the fiduciary duty aspect of this case was preserved at the trial level.

■ We hold that the trial court's finding that Dean Witter "did not practice or participate in any common law deceit" is not clearly erroneous. The findings of fact recount, for example, the various margin calls by Dean Witter, as well as Thompson's continuing reassurances to Robuck "that the account was safe and the equity sufficient." The findings then point out that Robuck got a monthly statement of his account and could have gathered all the material facts he needed by making an examination of the statement and reading the daily newspapers. However, that holding does not permit a final disposition of the case before us because of uncertainty as to the scope of the state law issues which were before the trial court for decision.

■ The findings regarding deceit do not establish as a substantive matter that Dean Witter did not breach a fiduciary duty which it might have owed to Robuck. Thompson misrepresented the soundness of Robuck's investment and the causes of the margin calls. The findings of fact do not

**2.** The California courts analyze the selection of the proper limitations provision by determining the "gravamen" of the plaintiff's complaint. *Day v. Greene*, 59 Cal.2d 404, 411, 380 P.2d 385, 29 Cal.Rptr. 785 (1963). In diversity, we follow the state courts' selection of the applicable statute. *E. g., Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 848 (9th Cir. 1976).

We begin our examination into the "gravamen" of Robuck's state-law claim by noting that Cal.Civ.Code § 1710(3) characterizes as "deceit" nondisclosures by parties, such as fiduciaries, who have a special duty to reveal all material facts. *Moe v. Transamerica Title Insurance Co.*, 21 Cal.App.3d 289, 306, 98 Cal. Rptr. 547 (1971); *Black v. Shearson, Hammill & Co.*, 266 Cal.App.2d 362, 367, 72 Cal.Rptr. 157 (1968). On the other hand, Cal.Civ.Code § 2219 establishes a separate action for breach of trust. *See Kornbau v. Evans*, 66 Cal.App.2d 677, 152 P.2d 651 (1944).

If the Supreme Court of California has definitively answered the question how the two causes of action fit together for statute-of-limitations purposes, we have not been cited the case. In *Bennett v. Hibernia Bank*, 47 Cal.2d 540, 559–60, 305 P.2d 20 (1956), the court applied the fraud statute, section 338(4), in an action by a bank member against the bank for failure to recognize the plaintiff's membership rights. The decision, however, rested on tolling grounds, and not on any choice between two limitations provisions. Of equally scant aid is *Korn v. Merrill*, 403 F.Supp. 377 (S.D.N.Y. 1975), *aff'd mem.*, 538 F.2d 310 (2d Cir. 1976), in which the district court stated by way of dictum that a suit charging a fiduciary with a fraudulent sale and a deceptive proxy statement was governed by the four-year California statute, section 343. The court also noted that the question was immaterial because the claim would have been barred under either section 343 or the three-year fraud statute. 403 F.Supp. at 387–88.

Cases closer to the facts of the instant case are *Schneider v. Union Oil of California*, 6 Cal. App.3d 987, 86 Cal.Rptr. 315 (1970), and *San Filippo v. Griffiths*, 51 Cal.App.3d 640, 124 Cal. Rptr. 399 (1975). In *Schneider*, the court found the four-year statute applicable, and rejected the three-year statute for conversion, Cal.Civ. Proc.Code § 338(3) (West). The court held that an action charging a corporation with giving effect to a forced transfer of shares was in essence an action for breach of trust, and not one for conversion. The court noted that both the elements of the causes of action and the available remedies for each theory differed significantly. Thus, it refused to hold that the action for breach of trust was in essence an action for conversion. *San Filippo v. Griffiths*, *supra*, involved a property settlement in which a spouse promised to pay 50 percent of any later-discovered marital property to the other spouse, and to pay 50 percent of any value intentionally understated in a prior accounting of existing marital property. The court found the four-year statute for breach of written contract (*Cal.Civ.Proc.Code* § 337(1)) applicable, rather than the three-year statute for fraud. The court appeared to conclude that if two limitations provisions are arguably applicable and fraud is involved, the longer of the two should be selected. 51 Cal.App.3d at 645, 124 Cal.Rptr. 399.

Even closer to the mark is *Kornbau v. Evans*, *supra*. There, the court held that the four-year statute applied to a suit charging an attorney with investing a client's money in a worthless mortgage and fraudulently representing to the client that the money was safe. The court said:

"* * * While it is true that from the allegations of the complaint and the evidence a cause of action based on fraud can be spelled out, that is not the only cause of action pleaded, and proved. . . . Those facts show not only fraud, but also the breach of an oral voluntary continuing trust." *Id.*, 66 Cal.App.2d at 683–84, 152 P.2d at 655.

establish Thompson's state of mind as to the truth or falsity of all his statements when he made representations to Robuck, whether Robuck relied on them to his detriment, or whether Dean Witter should be liable for the tort, if any, committed by its employee. In view of the district court's finding that Robuck should have known of the falsity of Robuck's statements by May 21, 1970, any reliance by Robuck after that date would have been unjustifiable. The findings do not, however, deal with the nature and extent of Robuck's reliance, if any, prior to May 21, 1970.

The record reveals that plaintiff's complaint contained (in count 3) a claim founded upon state law which included both an allegation of common law fraud and an assertion that Dean Witter was a fiduciary. The fiduciary claim, however, may not have been preserved for trial, for the pretrial conference order appears to limit the state law claim to common law fraud only.

■ Ordinarily, when a claim stated broadly in the complaint is narrowed by a pretrial conference order, agreed upon by all parties, the narrow and precise version limits what the claimant may assert and litigate at the trial. If that was the effect of the pretrial conference order in the instant case, the trial court's finding above quoted is sufficient, and the case should be affirmed in all respects. Unfortunately, the clarity of the pretrial conference order was clouded by other documents. The plaintiff's memorandum of law, filed after the pretrial conference order but before trial, contains a contention of breach of fiduciary duty that is separate from the common law fraud contention. The memorandum recites that the fiduciary duty claim is governed by a four-year statute. Defendant's memorandum of law does not indicate a clear position on whether any fiduciary duty claim remained before the court. It does state, however, that if any fiduciary relationship had existed between plaintiff and defendant, it had ceased at a time after the purchase of the LTV bonds. Thus, as argued in defendant's memorandum, the four-year statute of limitations, even if it applied, would not save plaintiff's claim.

The lack of any specific claim based on fiduciary duty is further evidenced by plaintiff's memorandum in support of the motion for new trial. That memorandum does not raise or discuss any issue of a four-year limitation period for a separate claim under state law based on fiduciary duty.

A remand of the case is, therefore, necessary so that the trial court may make the following findings and determinations:

1. Whether there was any claim with respect to breach of a fiduciary duty properly before the court for determination at the trial. If not, no additional finding by the trial court will be required.

2. If the court finds a claim with respect to breach of a fiduciary duty was properly before it for determination at trial, it should determine whether such a fiduciary duty existed or not. If it existed, the trial court should find whether it was breached within the four-year statutory period.

AFFIRMED in part, REVERSED in part, and REMANDED.