In re Donald M. NOAKES,
et.ux., Debtors.

Jack SEARLES, et. al., Plaintiffs,

v.

Harold V. DYE, Trustee, Defendant.

Bankruptcy No. 84–00155.
Adv. No. 288/0083.

United States Bankruptcy Court,
D. Montana.

Aug. 3, 1989.

Terry A. Wallace, Hamilton, Mont., for plaintiffs.

Michael J. Milodragovich, Missoula, Mont., for defendant/trustee.

Neal G. Jensen, Asst. U.S. Trustee, Great Falls, Mont., U.S. Trustee.

ORDER GRANTING
SUMMARY JUDGMENT

JOHN L. PETERSON, Bankruptcy Judge.

On October 20, 1988, Plaintiffs filed a state court action[1] against the Defendant

---

1. The Trustee has not invoked, either in this court or state court, the well settled doctrine announced in *Matter of Campbell*, 13 B.R. 974, 976 (Bankr. Idaho, 1981), holding:

Harold V. Dye, Trustee, alleging that Dye, in performance of his duties as Trustee in bankruptcy cause 284–00155, In re Donald Noakes, d/b/a Noakes Dairy and Nancy L. Noakes, Debtors, negligently "took possession of a herd of cattle, claiming some to be the property of the estate of Donald & Nancy Noakes", when in fact, the cattle were the property of the Plaintiff, and thereafter, "while the bankruptcy was pending or until the issue of the cattle could be decided", but while the Trustee held the herd, they were neither fed nor cared for, so that a substantial number of the herd developed mastitis or died from starvation. The Plaintiffs further allege the Defendant Trustee had a fiduciary duty toward Plaintiffs regarding the cattle herd and breached such duty to the damage of Plaintiffs in the form of loss of the herd, loss of income, emotional and mental stress. The Complaint also alleges that the Defendant Trustee maintains a bond "to insure his proper and legal performance as Trustee" and "that this Complaint constitutes a claim against that bond to the extent that these parties are entitled to claim against said bond". The Defendant trustee has furnished a bond in the sum of One Hundred Fifty Thousand Dollars ($150,-000.00) issued by St. Paul Fire and Marine Insurance Company for the faithful performance of his official duties, but the bonding company is not named as a party defendant and has thus never been served with process of Summons and Complaint. A copy of the bond is attached to this Order.[2]

"In regard to plaintiff U. & I.'s motion seeking permission to sue the trustee personally in state court or, alternatively, a decision by this court that no permission is necessary, the law is well-settled. The trustee in bankruptcy is an officer of the court appointing him, and courts other than the appointing court have no jurisdiction to entertain suits against the trustee, without leave from that appointing court, for acts done in his official capacity and within his authority as an officer of the court. *Barton v. Barbour,* 104 U.S. 126, 26 L.Ed. 672 (1881); *Leonard v. Vrooman,* 383 F.2d 556 (9th Cir.1967), *cert. den.* 390 U.S. 925, 88 S.Ct. 856, 19 L.Ed.2d 985 (1968); *Vass v. Conron Bros. Co.,* 59 F.2d 969 (2nd Cir. 1932); 2 *Collier on Bankruptcy* ¶ 23.20 (14th Ed.)."

The Defendant Trustee removed the state court action to federal district court, which court referred the matter to this court as a core proceeding under 28 U.S.C. § 157(b)(2)(A). No remand of the action has been sought by the Plaintiffs. After answer and discovery, the Defendant filed a Motion for Summary Judgment on the merits of the claim, and included that this action is barred by the statute of limitations and res judicata.

After review of the parties' briefs and evidence submitted in support thereof, I conclude that genuine issues of material facts exist as to the merits of the controversy which precludes summary judgment, but that Defendant's motion asserting the Defendant is entitled to summary judgment as a matter of law by reason of the applicable statute of limitations and res judicata are well taken. The Defendant has simply not developed a clear record for judgment on the merits. Further, the issues of fact are disputed. Summary judgment should not be granted when a case involves complicated questions of law and fact, and a proper resolution of these issues would be advanced by further development of the record in the case. *Virgil v. Time, Inc.,* 527 F.2d 1122, 1131, N. 15 (9th Cir.1975), *cert. denied,* 425 U.S. 998, 96 S.Ct. 2215, 48 L.Ed.2d 823 (1976). A decision based on an insufficiently developed record may "well be found later to be lacking in the thoroughness that should precede judgment." *Kennedy v. Silas Mason*

Whether this Court could raise the issue *sua sponte* is unnecessary to decide in view of the holding that the action is barred for other legal reasons explained in this Order.

**2.** A second bond of $500.00 containing only the personal signature of the Trustee was filed in the Noakes case as part of the appointment process of the Trustee. That bond has no application to this proceeding because it contains no language regarding the faithful performance of the duties of the Trustee. Moreover, Dye's bond with St. Paul Fire and Marine was a blanket bond required of said Trustee who qualified as Trustee in a number of cases as being the standing Trustee in the Missoula area. Rule 2010(a).

*Co.*, 334 U.S. 249, 257, 68 S.Ct. 1031, 1034, 92 L.Ed. 1347 (1948).

■ It is undisputed that the Plaintiffs' claim for relief centers around the Defendant's claim during the administration of the Noakes bankruptcy that the cattle herd was property of the estate. Plaintiffs therefore assert that from May, 1984, through August 29, 1984, the Defendant's conduct was negligent in failing to properly care for the cattle. Noakes filed a Chapter 7 petition on April 27, 1984, and Defendant was appointed Trustee on May 15, 1984. In early June, 1984, Defendant began to claim the herd as property of the estate, and continued that claim through August 29, 1984. At all times the herd was in the actual possession of Taylor, Jackson and Searles, through lease agreements between those parties. As Plaintiffs state in their brief:

"In August 1984, defendant ordered FmHA (Farmers Home Administration) to feed and care for the cattle. [Depo. Taylor, P. 68]. On August 29, 1984, the cattle were separated with FmHA getting what they were entitled to, and Taylor getting permission from the Defendant to care for the cattle. [Dept. Taylor, P. 69]."

Thus, by August 29, 1984, the Defendant Trustee had relinquished any Trustee's control of the cattle herd to Taylor and FmHA, so that no further basis for negligent care could be asserted against the Trustee. The Trustee was discharged from his duties as Trustee on October 21, 1986. The present action was commenced on October 20, 1988, one day short of two years from the Trustee's discharge, but well over four years after the alleged negligent acts of the Trustee.

The Plaintiffs contend the action is timely brought under 11 U.S.C. 322(d), which states:

"(d) A proceeding on a trustee's bond may not be commenced after two years after the date on which such trustee was discharged."

Bankruptcy Rule 2010(c) provides:

"(c) Proceeding on Bond. A proceeding on the trustee's bond may be brought by any party in interest in the name of the United States for the use of the entity injured by the breach of the condition." [3]

The Rules Advisory Committee Note (1983) explains:

"Subdivision (d) is derived from former Bankruptcy Rule 212(f). References should be made to § 322(a) and (d) of the Code which requires the bond to be filed with the bankruptcy court and places a two year limitation for the commencement of a proceeding on the bond. A bond filed under this rule should conform to Official Form No. 25. A proceeding on the bond of a trustee is governed by the rules in Part VII. See the Note accompanying Rule 7001. See also Rule 9025."

Part VII of the rules govern adversary proceedings and under the Advisory Committee Note (1983), it states that proceedings under Part VII include "proceedings on bonds under Rule 5008(d) and 9025". Rule 5008(d) is inapplicable to this action, since it deals with funds of the estate. Rule 9025 states:

"Whenever the Code or these rules require or permit the giving of security by a party, and security is given in the form of a bond or stipulation or other undertaking with one or more sureties, each

---

**3.** The present action was not brought in the name of the United States for the benefit of the Plaintiffs. *Collier on Bankruptcy,* ¶ 2010.05, pp. 2010–8 and 9 (15th Ed.), states "a failure to bring the action in the name of the United States will not be necessarily procedurally defective", citing *In re Traffic Safety Co., Inc.,* 21 B.R. 669 (Bankr. E.D.Pa.1982). *Traffic Safety* involved an action against the Trustee and his bonding company by a successor trustee under the Bankruptcy Act of 1898. Under the Act, the action on the bond against the surety could be brought on "application of any party in interest". 11 U.S.C. 78n (repealed 1978). There is no corresponding counterpart in the new 1978 Code to § 78n. Rule 2010 was adopted as the specific procedure for an action on the bond, and such rule does not contain the "party in interest" language of the old Act. *Traffic Safety* is thus questionable authority for *Collier's* statement. I do note, however, that the surety company was made a party defendant in the *Traffic Safety* case.

surety submits to the jurisdiction of the court, and liability may be determined in an adversary proceeding governed by the rules in Part VII."

Again, reference to the Rules Advisory Committee Note (1983) under Rule 9025 is pertinent.

"This rule is an adaptation of Rule 65.1 F.R.Civ.P. and applies to any surety on a bond given pursuant to § 303(e) of the Code, Rules 2001, 2010, 5008, 7062, 7065, 8005 and any other rule authorizing the giving of such security."

The only difference between Rule 65.1, F.R.Civ.P. and Rule 9025 is that Federal Rule 65.1 contemplates a motion to enforce a surety's liability, while Rule 9025 requires the initiation of an adversary proceeding against the surety.

From the above discussion, and posture of this case, it is clear to the court that Plaintiffs seek to hold Defendant personally liable for his alleged negligent actions, despite the allegations regarding the Trustee's bond.[4] It is important to remember that Plaintiffs commenced this action in state court under a negligence theory and the prayer for relief seeks damages only against the Defendant individually, not the surety of the Defendant, who is not a party to this action. In sum, Plaintiffs have not invoked § 322(d) of the Bankruptcy Code, but rather rely on § 323(b), which states the Trustee in a case under Title 11 has capacity to sue and be sued.[5] Indeed, an action on a bond is in its very nature an action against the surety. *United Bonding Insurance Co. v. Alexander*, 413 F.2d 1025, 1026 (5th Cir.1969).

Under Section 323(b), case law has developed that allows actions against the Trustee personally for negligent conduct during the administration of the estate. *In re Rigden*, 795 F.2d 727, 730–731 (9th Cir. 1986), holds:

"A bankruptcy or reorganization trustee has a duty to exercise that measure of

---

4. In view of the procedure adopted by the Plaintiffs in bringing the state court action, I think it is abundantly clear that the allegation regarding the bond was inserted because Plaintiffs realized their case was time barred unless § 322(d) was made applicable.

5. The Plaintiffs have not contended, not could they legally do so, that their action is brought under 28 U.S.C. § 959(a). *In re Balboa Improvements, Ltd.*, 99 B.R. 966, 970 (9th Cir. BAP 1989), relying in part on *Matter of Campbell*, supra, holds:

"Jurisdiction over a claim of misconduct by the debtor's attorney in the administration of an estate may be analogized to the exclusive jurisdiction over similar claims against a court-appointed trustee or debtor-in-possession. It is well settled that such fiduciary cannot be sued in state court without leave of the bankruptcy court for acts done in his official capacity and within his authority as an officer of the court. *In re Campbell*, 13 B.R. 974, 976 (Bankr. D. Idaho 1981). A limited exception to the rule is provided in 28 U.S.C. § 959(a). 28 U.S.C. § 959 provides:

(a) Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts of transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

This section was intended to permit actions redressing torts committed in furtherance of the debtor's business. *In re American Associated Systems Inc.*, 373 F.Supp. 977, 979 (E.D. Ky.1974). However, this section was not intended to apply to a breach of a fiduciary duty in the administration of a bankruptcy estate. *Maguire v. Puente*, 120 Misc.2d 871, 466 N.Y.S.2d 934, 938 (1983). The bankruptcy court is responsible for resolving issues affecting the administration of the estate. 28 U.S.C. § 157(b)(2)(A). Thus, we must determine whether the facts and the remedy sought by the Appellant fall within the narrow parameters of § 959(a) and outside the jurisdiction of the bankruptcy court over the administration of the estate. In *Ex parte Baldwin*, 291 U.S. 610, 618, 54 S.Ct. 551, 555, 78 L.Ed. 1020 (1934), the Supreme Court held that the exclusive jurisdiction of the bankruptcy court is determined by the main purpose of the suit. The main purpose of the suit herein seeks damages caused by the fiduciaries alleged misconduct in the administration of the estate. Accordingly, since the alleged breach was not premised on an act or transaction of the fiduciary in carrying on the bankrupt's business operation, § 959(a) is not applicable."

Even if § 959(a) were applicable, the claim for relief would be barred by the applicable Montana statute of limitations applicable to actions based on statutes. *See, infra*, p. 327.

care and diligence that an ordinary prudent person would exercise under similar circumstances. *In re Cochise College Park, Inc.,* 703 F.2d 1339, 1357 (9th Cir. 1983). The trustee also has a fiduciary obligation to conserve the assets of the estate and to maximize distribution to creditors. *In re Benny,* 29 Bankr. 754, 760 (N.D.Cal.1983); 2A *Collier on Bankruptcy,* ¶ 47.04 (14th ed.1978). Although a trustee is not liable for mistakes in judgment where discretion is allowed, he or she is liable 'for not only intentional but also negligent violations of duties imposed upon him by law.' *In re Cochise,* 703 F.2d at 1357 (citing *Mosser v. Darrow,* 341 U.S. 267, 272, 71 S.Ct. 680, 682, 95 L.Ed. 927 (1951)."

*Cochise College Park, Inc.,* supra, although decided under the 1898 Bankruptcy Act, held a trustee is liable "to the same extent as any other person for damages arising from misrepresentations actionable under the law of the state in which he acts". *Id.* at 1359. *See, also, In re Gorski,* 766 F.2d 723 (2nd Cir.1985) (trustee in bankruptcy may be held personally liable for breach of his fiduciary duties, and such liability may attach as result of negligence).

▮ Section 323(b) contains no statute of limitations regarding timely filing of such action against the trustee. *See, e.g.,* Section 546, which specifically includes a two year statute of limitations in preference and fraud cases and § 549, which carries the same limitation period on recovery of post-petition transfers. Accordingly, we must borrow a statute of limitations applicable to similar actions against private parties under state law, similar to the rule which applies in diversity cases. *Buhl v. Biosearch Medical Products,* 635 F.Supp. 956, 959 (D.Mont.1985), holds:

"In determining the proper period of limitations to apply to a diversity action in federal court, the federal court must ascertain and apply the statutes of limitations which would be applicable by the forum state's court in a similar action. *Robuck v. Dean Witter & Co., Inc.,* 649 F.2d 641 (9th Cir.1980)."

*Robuck* explains:

"Our rule for federal causes of action with no federal limitations period is to look to the state statute of limitations applicable to the most similar state-law cause of action. *E.g., Briley v. California,* 564 F.2d 849, 854 (9th Cir.1977)." *Id.* at 644.

An action for negligence under Montana law causing damage to property is governed by a two year statute of limitations. Sec. 27-2-207, Mont.Code Ann. An action for tort based on negligence causing damage to a person is governed by a three year statute of limitations. Sec. 27-2-204, Mont.Code Ann. An action to enforce a statutory liability is governed by a two year statute of limitations. Sec. 27-2-211, Mont.Code Ann. Under any of these Montana statutes, the Plaintiffs' action is time barred, having been filed four years after the Trustee's alleged negligent acts. I conclude therefore that Defendant's Motion for Summary Judgment on the basis that the Plaintiffs' action is barred by state statute of limitations is well-taken as a matter of law.

The second ground for granting Defendant's Motion for Summary Judgment is that the Plaintiffs' claim for relief is barred under the doctrine of res judicata and collateral estoppel. The facts involving the application of such legal doctrine are not in dispute. On June 19, 1984, Taylor and Dairy Placement Services filed a "Petition To Exclude Assets from Bankruptcy", alleging that the cattle were legally in possession of Jackson and Searles "by virtue of a verbal agreement between Petitioner [Taylor] and Jack Searles". In truth, the cattle were leased to Searles and Jackson on April 1, 1984, by written lease. Either way, the cattle were in possession of the Plaintiffs.

Defendant Trustee in answer to Taylor's petition alleged that Taylor's lease with Debtor was in fact a disguised security agreement which, since it was unperfected, was avoidable by the Trustee under 11 U.S.C. § 547. In truth, the lease was ter-

minated on March 23, 1984, when Noakes signed a termination agreement for Taylor.

Defendant also requested that the cattle be sold free and clear. Taylor responded in his "Response to Trustee's Amended Motion for Authorization to Sell Free and Clear of Lien" filed August 13, 1984, as follows:

"(e) These Respondents presently have in their possession and have been caring for the offspring of the milk cows which are the subject of this dispute. These Respondents have stood ready to take possession and provide care for the milk cows which these Respondents claim ownership of. Those milk cows are presently in the possession of JACK SEARLES who was feeding and milking those cows. To the best of these Respondents' knowledge all proceeds of the sale of milk have been used to purchase feed and provide care for the milk cows. To the best of these Respondents' knowledge the Trustee has expended no funds of the Bankruptcy Estate for the feeding or care of any of the disputed livestock to this date."

This allegation was made at the period of the time that Defendant supposedly "wrongfully or negligently" took possession of Taylor's cattle and failed to feed or care for them.

On November 9, 1984, Searles and Jackson filed a "Petition for Compensation and Reimbursement of Administration Expenses" in which they stated as follows:

"COMES NOW JACK SEARLES and JEFF JACKSON, who have acted in the capacity of custodians of Debtors' livestock in these proceedings, and make application for an allowance of compensation for their services and for their expenses paid and incurred in such capacity caring for Debtors' livestock in these proceedings, and in support of said application, represent and show as follows:

1. That they commenced caring for Debtors' livestock on July 15, 1984, and that from July 15 through July 26, 1984 fed Debtors' livestock at their expense, and incurred out-of-pocket expenses in the sum of $996.00 for the feed. That they have cared for the cows and fed them every day since July 15 to and including October 31, a period of 108 days.

2. That they acted in the capacity of custodial help for caring for Debtors' cows pursuant to implied authorizations and requests received from Debtors, from the U.S. Department of Agriculture FmHA, andor [sic] the Bankruptcy Trustee...."

The Petition for Compensation did not mention that Searles and Jackson held the cattle under lease with Taylor, and on that basis were in fact feeding and milking the cows. The Petition for Compensation thus flatly contradicts the allegations of the present Complaint that Defendant "took possession" of the cattle, and that he "conspired with FmHA" to deny Plaintiffs access to the herd to care for it, and that "during the time Defendant held the herd as Trustee, they were neither fed nor cared for".

Hearing on the Searles–Jackson Petition was held April 2, 1985. Searles' sworn testimony at that time was as follows:

"[By Mr. Holland: (Searles and Jackson's lawyer)]

Q. Do you presently hold any cattle that the estate owns or may own or have some claim on?

A. Yes.

Q. Please, tell the Court the amount of cattle at the present time.

A. 116.

Q. Tell the Court how you came into possession of those cattle.

A. I came into possession of them on ——, I was working for Noakes' Dairy and they were using my barn to milk. We were using two barns, they were using mine. When they ran out of money, all the cows came my way and they went bankrupt and the cows are on my property.

Q. Do you know the date or the approximate date that the Noakes' filed bankruptcy?

A. April 27 '84.

Q. At that date did you have possession of any cows as a result of your business arrangement with the Noakes? If so, how many.

A. 201 cows and bulls.

Q. Were you rendering any services or supplying anything in connection with the care of those animals?

A. Yes, I was milking them and feeding them.

. . . .

Q. You knew your brother had filed bankruptcy.

A. Brother-in-law.

Q. Had filed bankruptcy at this time.

A. Yes.

Q. Did you have any connection with Mr. Dye who, as I understand, was appointed trustee?

A. No.

Q. Did he come and make any arrangements or demand delivery of those cattle during any time?

A. No.

Q. During the time you had it?

A. No.

Q. Did any other person in connection with the bankruptcy demand possession of the cows?

A. No.

(Transcript of April 2, 1985 hearing, 6–7, 13–14).

Defendant was also examined at the April 2, 1985, hearing.

Q. Mr. Dye, I understand you've been appointed trustee.

A. Yes, I have.

Q. What date was that?

A. Pardon?

Q. What day was that?

A. May 15.

Q. Did you enter into possession of the assets of the estate on that date?

A. I became trustee on that date.

Q. Did you enter into the possession of the animals here?

A. No.

. . . .

Q. They [the cattle] were ownership of the bankrupt. Am I correct, counsel?

A. They were owned by the bankruptcy estate subject to liens of Farmers Home Administration and the First State Bank of Stevensville.

Q. I'm not as well versed in bankruptcy law as you, counsel. I gather what you say, you recognize their claim and delivered possession to them as of June 14.

A. I have never had physical possession of those cattle at all.

Q. I know you didn't.

Transcript, 27–29."

It is true Dye asserted ownership over the cattle as property of the estate, without knowledge of the Taylor–Searles and Jackson lease. But, Searles and Jackson, in attempting to make out an administrative claim of *quantum meruit*, maintained that the Trustee had *not* taken possession of the cattle and that *they* had fed and cared for them. From this course of competing claims came two orders of this court.

Taylor's petition to exclude assets of the estate was settled between Taylor and Defendant Trustee whereby Taylor took the cattle as his property, paid the Trustee $3,000.00, and waived any further administrative claim. Taylor's unsecured claim was then allowed in full. Notice of the settlement was given on March 13, 1985, by this court, and after objection by Searles and Jackson, the settlement was ordered approved on May 22, 1985. On the same date, Searles' and Jackson's petition for administrative expenses was denied, on the basis Searles' and Jackson's efforts did not benefit the estate, but rather themselves. Neither Order was appealed, so both Orders became final.

The result of both of these Orders were embodied in Trustee's Final Account and Report which did not allow any of Plaintiffs' administrative claims. Taylor, Searles and Jackson along with all other creditors received notice of the hearing on the final account. They did not object to that account and Taylor was paid on his unsecured claim as agreed.

The Bankruptcy Court is a "federal district court of authority and power". Its

judgments are "normally immune to collateral attack".

"They could be relied upon by state courts. And when the judgment was final and valid, it should be given appropriate res judicata or collateral estoppel effect in a state court; and entitled to full faith and credit. Similarly, such a bankruptcy judgment had res judicata and collateral estoppel affect in the same bankruptcy proceeding; and another bankruptcy proceeding; and other proceedings in the same or different federal court."

1B *Moore's Federal Practice,* ¶ 0.419[3–2]. *See, also In re Dominelli,* 820 F.2d 313 (9th Cir.1987), (judicially approved settlement of bankruptcy trustee's claim has res judicata effect).

Here, Plaintiffs invoked the jurisdiction of the Bankruptcy Court by filing proceedings before it and also by filing Proofs of Claim in the Noakes bankruptcy. The Orders approving the compromise settlement between Taylor and the Trustee and disallowing Searles' and Jackson's administrative claims became final once appeal time ran, and certainly became final when they were incorporated in Defendant's Final Account.

Likewise, this suit and the prior Bankruptcy Court litigation involve the same "transaction or occurrence", namely, the ownership and care of the herd of dairy cows originally "leased" by Taylor to Noakes. According to Plaintiffs' recent deposition testimony, their cause of action accrued by August 29, 1984. This was while the litigation between Defendant and Taylor over the ownership of the cattle was pending and before Searles' and Jackson's Petition had even been filed. Plaintiffs could have joined a claim for tort damages within the prior litigation; their failure to do so does not prevent the Orders being *res judicata* as to those claims.

"As a general principle, then, the plaintiff must assert in his first suit all the legal theories he wishes to assert, and his failure to assert does not deprive the judgment of its effect as *res judicata.*

So, too, with the demand for relief. The plaintiff must seek in his first suit all the relief to which he is entitled, and the judgment in that suit bars a second suit seeking different or additional relief."

*Moore's Federal Practice,* supra, ¶ 0.410[1].

■ Issue preclusion, or res judicata, has been summarized in *Del Mar Avionics v. Quinton Instruments Co.,* 645 F.2d 832, 834 (9th Cir.1981), citing *Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979):

"A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies ...' [citation omitted]. Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. [citation omitted]. Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."

In accordance with such holding, I conclude Taylor's settlement of his cattle claim and Searles–Jackson decision on their administrative claim settled fully and completely their claims against the Trustee and the estate. The present Complaint is nothing more than a rehash of the very matters settled and resolved between the parties and by court order. The same cattle, their care and feed, and ownership were in issue in the general bankruptcy case as are now in issue in this adversary case. The same parties are involved. The claims of Plaintiffs, while maybe in different form, should have been raised at that time, except for the obvious. Plaintiffs have changed cattle in the middle of the stream as to ownership and possession. But that switch in theory is unsupported by the undisputed fact that at all times Taylor and his lessees had

control, care and physical possession of the cattle, and from that salient fact arose their claims against the Trustee. Resolution of these claims in 1985 prevent their resurrection in 1988 under a different showcase and counsel. The Motion for Summary Judgment based on res judicata and collateral estoppel is well taken. For the above reasons,

IT IS ORDERED the Defendant's Motion for Summary Judgment is granted and this case is dismissed.

332

THE ST. PAUL
COMPANIES

## APPENDIX

### ST. PAUL FIRE AND MARINE INSURANCE COMPANY

Bond No. 400 HA 9831

Premium $ 450.00

BOND OF RECEIVER AND/OR TRUSTEE
IN CHAPTER 7 AND 13      PROCEEDINGS OF THE
BANKRUPTCY ACT OF THE UNITED STATES

FILED

JUL 2 3 1984

MICHAEL R. HELL, CLERK
BANKRUPTCY COURT

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE _____

DISTRICT OF __MONTANA__ .

KNOW ALL MEN BY THESE PRESENTS:

That we, __Harold V. Dye__
as Principal, and St. Paul Fire and Marine Insurance Company, as Surety,
are held and firmly bound unto the United States of America in the sum of

_____One Hundred Fifty Thousand and no/100ths----------------- DOLLARS
($ __150,000.00__ ), lawful money of the United States, to be paid to said
United States of America, for which payment, well and truly to be made,
we bind ourselves and our heirs, executors and administrators, jointly and
severally by these presents.

THE CONDITION OF THIS OBLIGATION IS SUCH THAT:

WHEREAS, the Bankruptcy Judges for the United States District Court in and
for the _____ District of __MONTANA_____
have appointed, or will appoint Receivers or Trustees in various proceedings
under Chapter 7 and 13          of the Bankruptcy Act, and

WHEREAS, said Principal has been appointed and is serving or may hereafter
be appointed to serve as Receiver and/or Trustee in one or more proceedings
under the provisions of Chapter 7 and 13          of the Bankruptcy Act;

NOW THEREFORE, if said Principal, as Receiver and/or Trustee, shall obey
such orders as the United States District Court or any of the Bankruptcy
Judges of such Court may make in relation to the trust assumed by said
Receiver and/or Trustee in cases in which he has been or will be appointed,
and shall faithfully and truly account for all monies, assets and effects
of such estates as shall come into his hands and possession, and shall in
all respects faithfully perform all his official duties as Receiver and/or
Trustee, then this obligation shall be void, otherwise to remain in full
force and effect.

The aggregate liability of the Surety for all claims asserted against this
bond shall be limited to the face amount hereof, regardless of the number
of years it is in effect and regardless of the number of cases involved.

This bond shall remain in full force and effect with respect to all Chapter
7 and 13      cases pending in this Court, until the Surety has terminated
further liability after thirty (30) days written notice filed with the
Clerk, United States District Court for the _____ District
of __MONTANA_____ .

Signed and sealed this __13th__ day of __June_____ , __1984__ A.D.

COUNTERSIGNED FOR
THE STATE OF MONTANA
TOOLE and EASTER, INC.
By _____
RESIDENT AGENT

_____ Principal
Harold V. Dye

ST. PAUL FIRE AND MARINE INSURANCE COMPANY

By __J. E. Cherpeski__ Attorney-In-Fact
J. E. Cherpeski

The Bond filed by Harold V. Dye as Trustee of the estates of various
assigned Debtors is hereby approved.

Dated: July 23, 1984
       25

_____
John L. Peterson