891 F.2d 295
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Joseph E. MEUTH, individually, and as Trustee for the Joseph
E. Meuth Money Purchase Pension Plan and as Trustee for the
Joseph E. Meuth Law Corporation Defined Benefit Pension
Plan, Plaintiff-Appellant,
v.
SHEARSON LEHMAN, aka American Express, Inc., David Guindon,
Frank Mathews, Defendants-Appellees.
 No. 88-5711.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 6, 1989.
Decided Dec. 1, 1989.
 
 Before WILLIAM A. NORRIS, DAVID R. THOMPSON, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Joseph Meuth ("Meuth"), as trustee and individually, appeals the district court's order of summary judgment in favor of appellees Shearson Lehman/American Express, Inc. ("Shearson"), David Guindon ("Guindon"), and Frank Mathews ("Mathews"). Meuth alleges that appellees violated Rule 10b-5 of the Securities Exchange Act of 1934 ("the Exchange Act"), 17 C.F.R. § 240.10b-5 (1988), and committed common-law fraud in connection with certain transactions in securities.[1] We have jurisdiction under 28 U.S.C. § 1291 and review de novo the district court's grant of summary judgment. We affirm.
 
 
 3
 * Meuth alleges that in August 1982, he opened two pension/brokerage accounts in the Beverly Hills, California office of Shearson through its account executive, Guindon. In his deposition, Meuth stated that he was looking for "conservative, safe investments." He authorized Guindon to acquire such securities for his account, subject to his ratification of the purchases. It was Shearson's practice to send Meuth confirmation slips shortly after each transaction. Meuth now complains of transactions in two stocks.
 
 
 4
 In April 1983, Guindon acquired stock in Newberry Energy Corp. ("Newberry") and March Resources, Inc. ("March") for Meuth's accounts. Meuth alleges that these were speculative stocks and acquired in violation of the earlier understanding about the quality of securities to be purchased. In the course of his deposition, Meuth acknowledged that he became concerned about his accounts shortly after receiving the confirmation slips showing the purchases of March and Newberry in April 1983 and that he had a growing apprehension about the stocks as being too speculative for a pension account. He claims that Guindon sought to induce him to ratify the purchases by making false representations.
 
 
 5
 Specifically, Meuth alleges that Guindon said that March had recently made a large gold find. Meuth also claims that he ratified Guindon's later purchases of March stock for his accounts between May and August 1983 in reliance upon the false representation about a gold find. Meuth states that Guindon passed along this false information from Mathews, the president and chief executive officer of March.
 
 
 6
 Meuth alleges similar facts in relation to Guindon's purchase of Newberry stock. Guindon first purchased Newberry stock for Meuth's accounts in April 1983. Meuth alleges that shortly after this purchase, Guindon told Meuth that Newberry was an "imminent" merger candidate. Guindon sold the Newberry shares a short time later, but in the summer of 1983 he repurchased Newberry shares for Meuth's accounts. Meuth inquired as to why Guindon had repurchased Newberry shares, and Meuth alleges that Guindon falsely represented that he had inside information about a buyout by a company called Helionetics at a substantial premium over market price.
 
 
 7
 After consulting with other brokers, Meuth alleges that he personally liquidated the Newberry and March shares in September or October 1983. He filed suit against appellees on August 8, 1986. The district court granted summary judgment for appellees on all counts after finding that (1) Meuth's claims were time-barred, and (2) he was precluded from Rule 10b-5 recovery because he failed to present evidence that he had relied upon the misrepresentations in connection with a "purchase" of shares or that these misrepresentations were the proximate cause of his damages.
 
 
 8
 Meuth appeals the grant of summary judgment, alleging that the district court erred in both findings.
 
 II
 
 9
 A three-year statute of limitations period governs all the claims in this appeal. Under California law, there is a three-year limitations period for a common law fraud action. See Cal.Civ.P.Code § 338(a) (West Supp.1989). Because Congress did not include a limitation period for actions brought under the federal securities acts, however, this court must look to the state statute of limitations applicable to the most similar state-law cause of action. See Robuck v. Dean Witter & Co., 649 F.2d 641, 644 (9th Cir.1980). An action charging violations of the antifraud provisions of the federal securities laws most resembles an action for fraud because to trigger liability both must include a showing of intentional or reckless conduct. See Vucinich v. Paine, Webber, Jackson & Curtis, Inc., 739 F.2d 1434, 1436 (9th Cir.1984). Thus, Meuth's claims for violations of both common-law fraud and Rule 10b-5 are governed by a three-year limitations period. See Robuck, 649 F.2d at 644.
 
 
 10
 A cause of action for fraud or under Rule 10b-5 does not accrue until the discovery, by the aggrieved party, of the facts constituting the fraud. Cal.Civ.P.Code § 338(d) (West Supp.1989); Robuck, 649 F.2d at 644. The term "discovery" has a broad meaning. It can occur
 
 
 11
 (1) when the plaintiff had actual knowledge of facts sufficient to arouse suspicion in a reasonably prudent person, or (2) when the plaintiff had access to the "means of knowledge" of such facts and a reasonably prudent person would have used those means before making the relevant financial decision. Moreover, if a prudent person would have become suspicious from the knowledge obtained through the initial prudent inquiry and would have investigated further, a plaintiff will be deemed to have knowledge of facts which would have been disclosed in a more extensive investigation.
 
 
 12
 Briskin v. Ernst & Ernst, 589 F.2d 1363, 1367 (9th Cir.1978); accord Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1412 (9th Cir.1987).
 
 
 13
 The parties dispute when the claims accrued. Meuth asserts that a genuine issue of material fact remains as to whether he "discovered" Guindon's alleged misrepresentations after August 8, 1983.[2] He reasons that he did not discover the misrepresentations until September or October 1983, when he liquidated the March and Newberry shares after soliciting and receiving negative market reports about these stocks from other brokerage houses. Appellees, on the other hand, assert that Meuth "discovered" the alleged misrepresentations prior to August 8, 1983 because he had either actual or inquiry notice of facts sufficient to arouse suspicion in a reasonably prudent person.
 
 
 14
 We agree with the appellees. Meuth admits that he was at least suspicious of wrongdoing in April 1983, immediately after he received confirmation slips evidencing the initial purchases of Newberry and March stock. According to Meuth, "the seed was planted in [his] mind" that "a shift was taking place." This turned into a "growing suspicion that these stocks were high risk speculations."
 
 
 15
 Consistent with this admission, Meuth contends that when Guindon called him in April 1983, Meuth questioned him about the Newberry purchase. Guindon then allegedly made the misrepresentation that the company was a merger candidate. Despite his "growing suspicion," Meuth did not then complain about the purchase. Moreover, Meuth alleges that Guindon also induced him to ratify a purchase of March stock in April 1983 by falsely stating that March had made a large gold find. Meuth alleges that Guindon obtained this false information from Mathews, an officer and director of March. Again, however, Meuth did not act.
 
 
 16
 The district court properly granted summary judgment as to these alleged misrepresentations. The statute of limitations bars recovery under either a Rule 10b-5 or a common-law fraud theory because Meuth should have reasonably discovered these alleged misrepresentations well before August 8, 1983. Meuth admits that he desired safe investments and was immediately suspicious about the Newberry and March purchases in April 1983. He had access to the "means of knowledge" through several sources, including other brokers. In short, there is no issue of triable fact remaining as to his "discovery" before August 8, 1983 of the misrepresentations allegedly made in April 1983.
 
 
 17
 Meuth alleges, however, that Guindon made further misrepresentations about Newberry and March in July and August 1983, when Guindon sold and repurchased the stocks. Meuth contends that he inquired again about why the stocks were in his account. Guindon allegedly responded that he had been talking to someone who worked at Newberry who had informed him that a company called Helionetics was about to purchase Newberry at a substantial premium over market price. Meuth also contradicted his own prior deposition testimony by asserting that Guindon misrepresented March's gold find sometime in July or August 1983.
 
 
 18
 The statute of limitations also bars recovery for these alleged, subsequent misrepresentations. The district court correctly noted that Meuth has provided no evidence that these misrepresentations occurred after August 8, 1983. In the absence of such evidence, no issue of triable fact remains concerning his discovery of these alleged misrepresentations after August 8, 1983 because Meuth was already suspicious about prior transactions in these stocks and had access to the means of knowledge to satisfy his concern.
 
 III
 
 19
 Because we find that Meuth's claims are barred by the statute of limitations, we need not consider whether he relied on misrepresentations or whether misrepresentations were made "in connection with the purchase or sale of securities."
 
 
 20
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 We are not here concerned with Meuth's other claims. Meuth expressly waived Counts IV, VII, VIII, and IX in his opposition to appellees' motion for summary judgment. Moreover, Meuth does not allege any error with respect to the district court's grant of summary judgment as to Counts II (violation of 15 U.S.C. § 17(a)), III (15 U.S.C. § 12(2)), or V (Cal.Corp.Code §§ 25400, 25401, 25216)
 
 
 [2]
 I.e., within three years of when he filed his complaint